COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,

v.

Ada CARDWELL, Appellee.

COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,

v.

Frances GREER, Appellee.
(Consolidated Cases)

Court of Appeals of Kentucky.

Nov. 11, 1966.

Robert Matthews, Atty. Gen., Frankfort, William A. Lamkin, Jr., Asst. Atty. Gen., Frankfort, John J. Blackburn, Department of Highways, Covington, C. Dant Kearns, Department of Highways, Louisville, Raleigh O. Jones, Glenn McDonald, Department of Highways, Louisville, for appellant.

S. Lloyd Cardwell, Robert G. Breetz, Stites, Peabody & Helm, Louisville, for appellees.

DAVIS, Commissioner.

Appellees, Frances Greer and Ada Cardwell, were awarded damages against appellee, Department of Highways, in their claims filed in the Board of Claims. The Department appealed to the circuit court, and for purposes of this opinion, we will regard the awards as affirmed by the circuit court. (Certain modifications in the amounts of the awards were made in circuit court, but the modifications are not involved here.)

The appellees were injured when a car in which they were passengers collided with a truck owned by J. R. White Contracting Company, driven by James Smith; the accident occurred September 28, 1955. The J. R. White Company was insured by Aetna Casualty and Surety Company. The insurance company settled the claims of appellees Cardwell and Greer against the White Company. Incident to these settlements the respective appellees, on September 20, 1956, executed written releases denominated as "release in full," and reciting, in part:

"* * * and by these presents do for myself, my heirs, executors, administrators and assigns, release and forever discharge the said J. R. White Contracting Co. and James Smith and all other persons, firms or corporations from all claims, demands, damages, actions, or causes of action, on account of damage to property, bodily injuries or death, resulting, or to result, from an accident to myself which occurred on or about the 28th day of September, 1955 * *."

The instant claims in the Board of Claims were filed September 25, 1956, asserting that the Department's employees failed to furnish adequate notice of repair work being performed on the highway at the site of the accident.

The Board of Claims found as fact that the appellees did not intend to release the Department of Highways when they executed releases to the insurance company. This finding is supported by ample evidence. The stubborn question is whether the plenary releases served to release the Department of Highways despite the contrary intention of the parties to the release.

The question was laid to rest in Kingins v. Hurt, Ky., 344 S.W.2d 811, decided March 24, 1961. The principle

enunciated in Kingins was followed in Gibson v. Dupin, Ky., 377 S.W.2d 585. The clear teaching of those decisions is that the release of one joint or concurring tortfeasor serves to release them all, and the instrument of release should be construed to mean what it says, and "* * * unless on its face it can fairly be interpreted as reserving the claimant's rights against other tortfeasors it will be treated as an unconditional release." Kingins v. Hurt, Ky., 344 S.W.2d at 812. The court is not inclined to reconsider the ruling in Kingins and Gibson.

Neither may we accept the contention of appellees that the rule enunciated in Kingins should be given prospective force only. It is true that some opinions of this court have permitted absolute releases to be contradicted, and permitted consequent recovery against one tortfeasor even after the claimant had executed a full release to another tortfeasor. For example, see Deatley v. Phillips, 311 Ky. 698, 225 S.W.2d 296; Louisville Gas & Electric Co. v. Beaucond, 188 Ky. 725, 224 S.W. 179; Louisville & Evansville Mail Co. v. Barnes' Adm'r, 117 Ky. 860, 79 S.W. 261, 25 Ky.Law Rep. 2036, 64 L.R.A. 574, 111 Am.St.Rep. 273, and cases discussed in them. However, we are committed to the rule that the release should preserve the right to pursue any part of a claim against another tortfeasor and failing to do so, the plain language of the release must control. The release in the Kingins case was executed in 1958, some three years before the ultimate decision of that case in this court, but its principle was made applicable to the litigants who had executed a release in 1958—or retrospectively. We are not persuaded that claimants have been lulled into execution of full releases by virtue of reliance upon decisions of this court that the releases really did not mean what they said. On the contrary, it seems plain that no person cognizant of the law would deliberately execute a full release with a view to later asserting that the release did not mean what it said. In some instances, as noted, this court has afforded relief to persons who had inadvertently given full releases when they intended to give partial ones, but that policy is deemed inconsistent with orderly procedure. Surely it does not ask too much of draftsmen and others dealing in such instruments to take the time and trouble to have them say what is meant.

■ It is true that the Board of Claims made a factual finding that appellees did not intend to execute a full release, but this is not a situation which brings into play the usual rule that the factual finding of an administrative body is to be sustained if supported by substantial evidence. Rather, this is a situation in which the Board has misapplied the legal effect of the facts. In such cases the courts are not bound to accept the legal conclusions of the administrative body. 2 Am.Jur.2d, Administrative Law, Section 676.

The judgment is reversed in each appeal, with directions to enter new judgments setting aside the awards and remanding the cases to the Board of Claims for dismissal of the claim in each case.

## DISSENTING OPINION

STEWART, Judge.

I am unable to agree with the holding in the majority opinion.

The primary issue raised is whether the release executed by each appellee is a defense available to appellant as a joint tortfeasor where it is shown by extraneous evidence, as was done in this case, that such was not the intention of the parties to the release.

Until recently the Court of Appeals has followed the so-called "modern view" in answering this question, as distinguished from the "common law view." Necessarily the decisions regarding the subject have reflected different factual situations. Nevertheless, until 1961 this court consistently

held that the intention of the parties to the release must be considered in determining whether or not the release of one joint tortfeasor releases the others, and that this intention could be shown by evidence extraneous to the release.

In 1904 the issue was squarely presented in the case of Louisville & Evansville Mail Co. v. Barnes' Adm'r, 117 Ky. 860, 79 S.W. 261, 64 L.R.A. 574. There two companies were sued for jointly causing the death of plaintiff's intestate. Shortly before trial the plaintiff accepted $1000 from one of the companies and dismissed his action against it. The trial against the other company resulted in a jury award of $2000. On appeal appellant contended that the settlement with the first company should be a defense available to it as a joint tortfeasor.

Although the opinion makes no mention of a written release, this court reviewed all the evidence surrounding the settlement and found there was an "understanding" between the parties that the settlement only applied to them and not to joint tortfeasors. It stated that, even though it was unable to find where this precise question had been considered or passed upon before in Kentucky, it concluded the great weight of authority supported the rule that the release of one joint tortfeasor is not automatically a release of all. Id., 79 S.W. page 263. As justification for adopting the rule, it relied heavily on the fact that there had only been a partial satisfaction of the plaintiff's cause of action. This court said:

" * * * The law ought not to be that a release of one tort feasor, by his making a partial satisfaction for the wrong done, should operate as a release of the other wrongdoers. The law looks with favor upon compromises and settlements. It is not the intention of the law to force people into litigation and prevent settlements out of court. To uphold the

rule contended for by appellant, such a result would follow."

The high lights of the Barnes case were: (1) The establishment of the rule that the release of one joint tortfeasor is not automatically the release of all; and (2) the admissibility of parole evidence to show (a) the intention of the parties and (b) the amount of satisfaction of the claim.

The importance of the "intentions" of the parties was more clearly emphasized years later in Lawrence v. Board of Councilmen of City of Frankfort, 162 Ky. 528, 172 S.W. 953. In that case the plaintiff brought suit against the board of councilmen of the City of Frankfort and Henry Ringold for injuries sustained because of their failure to keep the sidewalk in front of Ringold's store in a reasonably safe condition. Before the trial plaintiff accepted $25 paid to him by Ringold "in full for all damages received by me and upon which suit has been brought because of the fall on the sidewalk in front of said Ringold's store on St. Clair Street." The city pleaded in bar to the action the execution of this release. The trial court instructed the jury that:

"They should 'find for the defendant (city) unless they believed from the evidence that the receipt and release for $25 given to Ringold was only intended by plaintiff and Ringold as a partial settlement of plaintiff's claim for damages, and was not intended for a full settlement of his entire claim for damages.' " Id., 172 S.W. 954.

On appeal this court held the trial court's instruction correctly presented the issue to the jury. Since the release showed on its face that the plaintiff received the $25 in *full* settlement of his claim for damages, he had the burden of proof to overcome its result. Parole evidence of the parties and a witness to the release to the effect that it was not their intention to release the city was ruled admissible. Upon the basis

of such evidence the jury had found the release was avoided as to the city.

According to an annotation to 73 A.L.R. 403, the modern "intention" rule was established in Kentucky by the case of Louisville Gas & Electric Co. v. Beaucond, 188 Ky. 725, 224 S.W. 179. There the plaintiff was severely injured while working for the Home Telephone Company when he came into contract with an electric wire belonging to the defendant electric company. In satisfaction of his claim against the Home Telephone Company the plaintiff accepted $750 and executed a writing which released the company from further liability. Although the release is not quoted in the opinion, it expressly reserved the plaintiff's right to prosecute an action against the defendant electric company. It was held that this reservation was valid since the plaintiff had received only a partial satisfaction for his injury. The court also held that the defendant electric company was entitled to a *pro tanto* credit for the amount received from the other tortfeasor.

Although the editors of ALR cite the Beaucond case as the foundation of the "intention" rule in Kentucky, it was not as necessary for the court to go as far there as it had already done in the previous Barnes and Lawrence decisions. For in the Beaucond case it merely carried out the intentions of the parties as expressed in the release. In the former cases this court had held that the actual intentions of the parties should be carried out even though the language in the release expressed a contrary intention.

This issue was not again presented to the court until 1945, in the case of Miller's Adm'x v. Picard, 301 Ky. 157, 191 S.W.2d 202. There Mary Jane Miller employed Joe Sprinkles, the owner and operator of a taxicab in Knox County, to transport her from Barbourville to Fount. On the return trip the sheriff of Knox County, who held a warrant for the arrest of Sprinkles, undertook to stop the taxicab for the purpose of arrest. Instead of stopping, Sprinkles attempted to run over the sheriff, which caused the sheriff to shoot at and into the cab, killing the passenger Miller.

The administratrix brought an action against Sprinkles, but while the suit was pending the parties settled for the sum of $350, upon the payment of which she executed a full and complete release. Thereafter an action was instituted against the sheriff. In his answer he pleaded the settlement of the previous action as a complete defense to the suit against him. When the administratrix declined to plead further, the trial court sustained a motion to dismiss in favor of the defendant sheriff. On appeal this court held that the question for determination was whether or not the taxicab driver and the sheriff were joint tortfeasors, for if they were the settlement with and a full release of one of them barred any action against the other. It found that a joint tortfeasor relationship existed and affirmed the lower court.

At first glance the Picard case seems to change the rule in Kentucky concerning the effect of a release of one joint tortfeasor. Actually that case is consistent with previous decisions and is not in conflict with the "modern" rule; for in the Picard case there were neither pleadings nor proof that the actual intention of the parties was anything other than that expressed in the release. The "modern" rule followed by previous Kentucky decisions was that a release of one joint tortfeasor is not automatically a release of all, i. e., if it can be shown by extraneous (parole) evidence that the parties did not have the intention to release all, and that such intention should be given effect. This court a few years later clarified any uncertainty caused by its decision in the Picard case. See Deatley v. Phillips, 311 Ky. 698, 225 S.W.2d 296.

In the Deatley case the plaintiff brought an action against the Phillips Taxicab Company for negligently operating its cab so as to cause it to collide with a C. & O. Railroad train at an intersection in Mays-

ville. As a defense the cab company alleged that the plaintiff had given the C. & O. Railroad the following release:

"For this amount ($1300) agreed upon and accepted without any other consideration, promise or agreement, in full satisfaction, release and discharge of any and all claims or causes of action whatever, arising from or growing out of or in any way connected with the fatal injury to the said Leroy Deatley * * *."

In its reply the plaintiff alleged that " * * * it is true that he entered into a certain writing, but that said writing does not contain the whole agreement made by the parties, * * * that the covenant applied to the railway company only, plaintiff to retain its cause against the taxicab company." A demurrer to this reply was sustained; the petition was dismissed when the plaintiff failed to plead further.

On appeal, this court held the reply was not vulnerable to demurrer but raised a question of fact as to whether the release was intended to be limited to the appellant's claim against the C. & O. Railroad and was not meant to include the taxicab owner. It also ruled parole evidence was admissible to show that the release was intended to be a settlement of the appellant's claim only against the C. & O. Railroad, citing the Barnes, Beaucond and Lawrence cases.

All of these cases were reaffirmed in Daniel v. Turner, Ky., 320 S.W.2d 135, where this court stated that " * * * a release of one joint tort-feasor necessarily works a discharge of all others who may be liable for the same injury unless it appears that the releasor's claim for damages was thereby only partially satisfied and there was no intention to release other claimed wrongdoers from liability." Since there was neither pleading nor proof which controverted the intention as expressed in the general release, the court, as in the Picard case, held that summary judgment

should be sustained in favor of the defendant.

Thus, the law in Kentucky, until Kingins v. Hurt, Ky., 344 S.W.2d 811, decided in 1961, was that the release of one joint tortfeasor does not automatically release the others, and that evidence extraneous to the release is admissible to show a contrary intention in avoidance of the release. In so holding this court had abandoned the common law view so frequently criticized, and had gone farther than most jurisdictions in carrying out the intention of the parties. This court in the Kingins case, however, took the position that "the written instrument should be construed to mean what it says, and unless on its face it can fairly be interpreted as reserving the claimant's rights against other tortfeasors it will be treated as an unconditional release."

The rule which prevailed in Kentucky prior to the Kingins case, that the intention of the parties was the controlling factor and such a fact could be established by parole, has been approved by some of the leading authorities on torts and contracts. William L. Prosser in his "Law of Torts," 3rd Ed., in § 46, on page 272, makes these statements:

"The only desirable rule would seem to be that a plaintiff should never be compelled to surrender his cause of action against any wrongdoer unless he has intentionally done so, or unless he has received such full compensation that he is no longer entitled to maintain it. If the statutes are taken into account, this is now the rule actually applied in some two-thirds of the American jurisdictions. Where there has been such full satisfaction, or where it is agreed that the amount paid under the release is so received, no claim should remain as to any other tortfeasor; but these are questions of fact, and normally to be determined by the jury, where the amount of the claim is unliquidated. The release, however, may very well be taken as a prima facie acknowledgment of satisfaction,

and the burden placed upon the plaintiff to prove that it is not. The requirement that an express reservation of rights against other tortfeasors be inserted in the release itself seems unfortunate, when releases frequently are signed by plaintiffs ignorant of the law and without legal advice. If it is clear that the satisfaction received was understood to be only partial, it should not discharge the claim against the second tortfeasor. * * *"

See also Harper and James, The Law or Torts, Vol. 1, § 10.1, p. 712.

Corbin on Contracts, 1960 Edition, § 596, page 572, lays down this principle concerning the parole evidence rule as it applies to a release of one joint tortfeasor:

"* * * there is a definite tendency to relax the operation of the 'parol evidence rule' when a stranger to the writing is involved. This tendency is to be thoroughly approved when it prevents a writing from being held to be a substituted integration and discharge when the contracting parties have not so agreed. It is to be thoroughly disapproved if it it is used to establish the validity of some oral agreement (or a written one) that has been effectively discharged by a subsequent fully integrated writing (or by a subsequent oral contract). *It is to be thoroughly approved in those cases where it is used to prevent what appears on the face of an instrument to be a 'release' of one joint obligor or joint tort feasor from operating as a discharge of another such obligor or tort feasor. In such a case, the offered testimony shows that the claimant did not intend the document to be a discharge of all of his claims or to indicate that he had accepted anything in satisfaction of all of them. For that purpose it should be admissible in any suit against anybody.*" (Emphasis added.)

The Kingins case, in holding that a claimant's rights against another tortfeasor, unless reserved, would be treated as an unconditional release, relied solely upon the Restatement of the Law of Torts, § 885(1). Prosser, as noted in the Kingins opinion, criticizes the Restatement's view on this point.

I believe the Kingins case should be overruled insofar as it is in conflict with the principles of law affecting releases set forth in the cases decided in Kentucky prior to it and discussed in this opinion.

I would affirm the judgment.