Ernest ABNEY, Appellant,

v.

NATIONWIDE MUTUAL INSURANCE
COMPANY, et al., Appellees.

No. 2004–SC–000937–DG.

Supreme Court of Kentucky.

Nov. 22, 2006.

As Modified on Denial of
Rehearing March 22, 2007.

James D. Decker, Lexington, Counsel for Appellant.

D. Craig Dance, Greenebaum Doll & McDonald, PLLC, Lexington, Gregory L. Smith, Smith & Hoskins, Louisville, Counsel for Appellees.

Opinion of the Court by Justice McANULTY.

This appeal involves an issue of first impression in Kentucky: since the enactment of KRS 411.182, does a release negotiated with one joint tortfeasor discharging "all other persons, firms or corporations liable, or who might be claimed to be liable" effectively release another joint tortfeasor who had not negotiated or paid any consideration for the release? The trial court granted summary judgment on the basis that it does, and the Court of Appeals affirmed (in a two to one opinion). Because we conclude that the language in the release follows the plain intent expressed in KRS 411.182(4), we affirm.

In this opinion, we will start with the applicable language of KRS 411.182(4), turn to the facts pertaining to the execution of the release at issue in this case, and then focus on the provisions of the release. We will conclude with our analysis of the release provisions under KRS 411.182(4). Since the appellant has argued mutual mistake as a defense to the release, we will discuss how the trial court was correct in concluding that the defense is not applicable in this case.

## I. KRS 411.182(4)

In concluding that the release at issue could be asserted as a bar to further recovery by another joint tortfeasor, the trial court and the Court of Appeals both relied on this Court's decision in *Richardson v. Eastland, Inc.,* 660 S.W.2d 7 (Ky.1983). We believe, however, that we need look no further than KRS 411.182(4), which was enacted after *Richardson,* as we believe the General Assembly has spoken on the issue.

By enacting KRS 411.182, which expressly governs the effect of a release such as the one at issue here, the General Assembly departed from common law tradition that the release of one joint tortfeasor releases all.

KRS 411.182, in relevant part, is as follows:

(4) A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable, shall discharge that person from all liability for contribution, but it shall not be considered to discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons shall be reduced by the amount of the released persons' equitable share of the obligation, determined in accordance with the provisions of this section.

## II. Facts pertaining to the execution of the release at issue in this case

In this case, Ernest Abney was a passenger in a pickup truck owned by Grady Brake and driven by his son, Arthur Brake, when Arthur Brake rear-ended another vehicle driven by Tonya Wright. Just before the accident, Tonya Wright either slowed down or stopped her vehicle abruptly to retrieve her purse, which her husband had thrown out the car window in an argument that the couple was having. As a result of the accident, Abney sustained significant injuries including a broken right hand and a back injury that required surgical intervention.

At the time of the accident, Kentucky Farm Bureau Mutual Insurance Company (KFB) insured Tonya Wright. And Nationwide Mutual Insurance Company insured the Brakes.

Abney and his wife, Kristy, executed a release with KFB at a local KFB agent's office. At the time the Abneys signed the release, they did not have legal counsel present.

### III. The provisions of the release

 The one-page release was entitled "RELEASE OF ALL CLAIMS." It released, acquitted and forever discharged "both Tonya Wright and KENTUCKY FARM BUREAU MUTUAL INSURANCE COMPANY or THE FB INSURANCE COMPANY, their heirs, executors, administrators, agents and assigns." The release also released:

... all other persons, firms or corporations liable, or who might be claimed to be liable, of and from any and all actions, causes of action, claims, demands, costs, loss of services, expenses and compensation, or suits at law or in equity, of whatsoever kind or nature, arising out of any and all known and unknown injuries and damages resulting or to result from an accident that occurred on or about the 2 day of October, 1999 at or near Bethlehem Road Bourbon County Kentucky.

The release further provided:

I/we hereby declare and represent that the injuries sustained and that recovery therefrom is uncertain and indefinite, and in making this release and agreement it is understood and agreed that I/we rely wholly upon my/our own judgment, belief and knowledge of the nature, extent, and duration of said injuries, and that I/we have not been influenced to any extent whatsoever in making this release by any representations or statement regarding said injuries, or regarding any other matters, made by the persons, firms or corporations who are hereby released, or by any person or persons representing them, or by any physician or surgeon employed by them.

Furthermore, I/we do hereby agree that in consideration of all aforesaid payments [one payment of $22,000] to further indemnify and forever hold harmless all persons released by this agreement, their successors, employees, agents, or principals for loss from any and all claims that may hereafter be made seeking compensation for the events described herein, specifically agreeing that I/we will pay any and all court costs, attorney's fees, and any other legal expenses in connection with the processing of such claims against all released parties.

It is mutually understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of those herein released, or who might be claimed to be liable, by whom liability is expressly denied.

This release contains the ENTIRE AGREEMENT between the parties hereto, and all prior representations are hereby merged into this agreement.

I/we further state that I/we have carefully read the foregoing release and know the contents thereof, and I/we sign the same as my/our free act.

And just before the signature line, the release emphasized: "CAUTION! THIS IS A RELEASE AND YOU ARE MAKING A FINAL SETTLEMENT. READ CAREFULLY BEFORE SIGNING."

After executing this release, Abney filed an automobile negligence claim against Arthur Brake and Grady Brake and an insurance bad faith claim against Nationwide. The Brakes filed a motion for summary judgment on the basis of the release, which the trial court ultimately granted. Consequently, the trial court dismissed the action as to all defendants.

### IV. Analysis of the release provisions under KRS 411.182(4)

Does a release that releases, acquits and forever discharges one joint tortfeasor, her

insurer, and all other persons, firms or corporations liable, or who might be claimed to be liable, satisfy the "unless it so provides" requirement of KRS 411.182(4)? By the plain terms of the statute and the plain terms of the release, we hold that it does.

It is of no consequence to our decision that neither the Brakes nor Nationwide are specifically named or specifically identified in the release. If our legislature had intended to impose a specific identity requirement, as Abney urges this Court to impose, it would have so provided.

■ In holding that the language used in the release at issue satisfies the requirement of KRS 411.182(4), we acknowledge that, while some courts interpret similar statutes as we do, other courts have taken two different approaches: the specific identity approach advocated by Abney and the intent approach. *See Moore v. Missouri Pacific R.R.*, 299 Ark. 232, 773 S.W.2d 78 (1989) (discussing and evaluating different approaches taken by state courts and federal courts interpreting state laws and ultimately adopting the specific identity approach); *see also* Anne M. Payne, Annotation, *Release of one joint tortfeasor as discharging liability of others under Uniform Contribution Among Tortfeasors Act and other statutes expressly governing effect of release,* 6 A.L.R.5th 883 (1992). We reject those approaches, however, because "it is neither the duty nor the prerogative of the judiciary to breathe into the statute that which the Legislature has not put there." *Gateway Const. Co. v. Wallbaum,* 356 S.W.2d 247, 248–249 (Ky. 1962).

■ It is further of no consequence to our decision that the release was a standard, fill-in the blank form that was broad in scope. It is a contract nonetheless. *See Richardson,* 660 S.W.2d at 8. As with contracts generally, the courts must look to the language of the release to determine the parties' intentions. *See Woodruff v. Bourbon Stock Yards Co.,* 149 Ky. 576, 149 S.W. 960, 962 (1912). When no ambiguity exists in the contract, we look only as far as the four corners of the document to determine that intent. *See 3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metro. Sewer Dist.,* 174 S.W.3d 440, 448 (Ky.2005). "The fact that one party may have intended different results, however, is insufficient to construe a contract at variance with its plain and unambiguous terms." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.,* 94 S.W.3d 381, 385 (Ky.App.2002). "Generally, the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to *de novo* review." *Id.* Here, the release is clear and unambiguous that it releases both Tonya Wright and KFB, their heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable, or who might be claimed to be liable.

The description of the discharged parties read in context of this release shows that the parties' intention was to put an end to all of Abney's claims relating to the accident that occurred on October 2, 1999, at Bethlehem Road, Bourbon County, Kentucky. This included any possible third party claims against the KFB insured. Summary judgment in favor of the Brakes and Nationwide on the basis of this release as evaluated under KRS 411.182(4) was appropriate.

### V. Mutual mistake as a defense to the release

■ As to the defense of mutual mistake, the trial court correctly determined that based on affidavits and deposition testimony, there was no genuine issue as to any material fact pertaining to the lan-

guage employed in the release, and the Brakes were entitled to judgment as a matter of law. *See* CR 56.03; *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky.1991). Here, there is no evidence in the record which supports the argument that the mistake was a mutual mistake of fact.

■ To vary the terms of a writing on the ground of mistake, the proof must establish three elements. *See Campbellsville Lumber Co. v. Winfrey,* 303 S.W.2d 284, 286 (Ky.1957). First, it must show that the mistake was mutual, not unilateral. *See id.* Second, "[t]he mutual mistake must be proven beyond a reasonable controversy by clear and convincing evidence." *Id.* (emphasis in original). Third, "it must be shown that the parties had actually agreed upon terms different from those expressed in the written instrument." *Id.*

■ The mistake must be one as to a material fact affecting the agreement and not one of law, which is "an erroneous conclusion respecting the legal effect of known facts." *Sadler v. Carpenter,* 251 S.W.2d 840, 842 (Ky.1952).[1] A material fact is one that goes to the root of the matter or the whole substance of the agreement. *See Sherwood v. Walker,* 66 Mich. 568, 33 N.W. 919, 923 (Mich.1887) (holding that there was a jury issue on mutual mistake of material fact when contract was for the sale of a "barren cow" and the cow was pregnant at the time of the sale).

Here, the evidence shows that the thing being bargained for was a $22,000 lump sum settlement by Abney and a release by KFB of its insured and KFB. It is evident from the release, Abney's affidavit and the deposition testimony of John Smoot, KFB's claims adjustor, that the release language at issue was intended, yet not appreciated or considered by Abney and Smoot. This, however, is no ground for avoidance of an enforceable contract on the defense of mistake. This is a mistake of law, not fact.

The deposition testimony from Smoot was as follows:

Q. All right. Did you select the settlement release form that you used by mistake or was it your intention to use that form?

Remember we talked about the form of the release that you used? You said you used a general release, remember that?

A. That's the only release we have.

Q. Okay. So you didn't select that by mistake? You intended to use that release form?

A. Correct.

Q. And remember those words I read to you from the form [referring to "... all other persons, firms or corporations

---

1. *Sadler,* 251 S.W.2d at 842, acknowledges that there are exceptions to the general rule that a mistake must be a mistake of fact and not a mere mistake of law: "There are exceptions to this general rule as when a mistake of law is induced by fraud, undue influence or abused of confidence." In the two paragraphs preceding Abney's conclusion to his Appellant brief, he argues that the exception was applicable in this case because the Abneys were mistaken in their understanding of the scope of the release and their mistake was induced by fraud or inequitable conduct on the part of Smoot. Abney labels this argument "Unilateral Mistake" in his brief, but he provides no reference to the record—as required by CR 76.12(4)(c)(v)—showing whether the issue was properly preserved for review and, if so, in what matter. Our review of the record reveals that Abney consistently argued below that the release at issue should be reformed due to a mutual mistake on the part on Smoot and Abney. Abney never argued fraud, undue influence or abused of confidence on the part of Smoot. Consequently, that issue was not before the trial court, and this Court will not consider any argument based on that premise.

liable, or who might be claimed to be liable"]?

A. Yes.

Q. All right. You intended for those words to be in that release?

A. The company did, yes.

Q. Well, you were acting on behalf of the company, right?

A. Yes.

Q. So both you and the company intended for those words to be in that release?

A. Yes.

. . .

Q. All right. Did you intend, by that release, to release your insured and Kentucky Farm Bureau?

A. Absolutely.

## VI. Conclusion

In conclusion, the General Assembly has enacted KRS 411.182(4) to expressly govern the effect of releases entered into between a claimant and a person liable. Such a release shall discharge the person liable from all liability for contribution, but the release shall not be considered to discharge any other persons liable upon the same claim unless it so provides. If the release so provides, it has served the dual purpose of protecting claimants against involuntary discharge and finally putting a dispute to rest for the persons liable. A release so provides that plainly discharges all other persons, firms or corporations liable, or who might be claimed to be liable upon the same claim. Since the parties to the release in this case expressed their intention in plain and unambiguous terms, it is the court's duty to enforce the contract as written.

Therefore, we affirm the summary judgment of the Bourbon Circuit Court.

LAMBERT, C.J.; MINTON, and ROACH, JJ., concur.

SCOTT, J., concurs by separate opinion in which LAMBERT, C.J., joins.

GRAVES, J., dissents by separate opinion in which WINTERSHEIMER, J., joins.

SCOTT, Justice, concurring.

Although saddened by the result, I am compelled by the law to concur with the majority. Kentucky law is quite clear about the interpretation of contracts. If the contract is unambiguous, you stay within the four corners of the document to determine its meaning. *3D Enterprises Contracting Corp. v. Louisville and Jefferson County*, 174 S.W.3d 440, 448 (Ky. 2005). That is "doubly true" when you are interpreting its legal meaning. *Cantrell Supply, Inc. v. Liberty Mutual Insurance Comp.*, 94 S.W.3d 381, 384–5 (Ky.2000).

Here, the document was not vague. It specifically noted that, "all other persons, firms or corporations liable, or who might be claimed to be liable," were to be released. The language is clear and unambiguous and is nearly identical with standard language used in releases all across the country. It was titled "RELEASE OF ALL CLAIMS" and above the signature line, boldly stated, "CAUTION: THIS IS A RELEASE AND YOU ARE MAKING A FINAL SETTLEMENT. READ CAREFULLY BEFORE SIGNING."

That being said, this case should be held up as a "poster child" for people who desire to negotiate releases or agreements without an attorney. But, to change the law just to save the Appellant, would undo hundreds, if not thousands, of otherwise valid general releases that are rightfully used on a daily basis across this state.

For these reasons, I cannot support the "specific identity" or the "general intent"

rules, as either would essentially destroy all general releases.

LAMBERT, C.J., joins this concurring opinion.

GRAVES, Justice, dissenting.

Respectfully, I dissent.

The majority opinion rewards and discharges a wrongdoer who made no attempt to contribute or to settle. This is truly a windfall absolution for the tortfeasor who will not share making reparation to his prey. Moreover, a trap was set for the unwary and innocent Appellant thus preventing his receiving full compensation.

Personal injury releases are contracts whereby the victim party accepts monetary consideration and agrees in return to forego claims against the tortfeasor. Viewing the problem by the simple notion that most individuals are capable of managing their own affairs and generally should be able to freely enter into binding agreements, the circuit court erroneously made determinations about personal injury releases fully in accordance with the law of contracts. Conceptually this is insidious because of the grossly unbalanced bargaining positions between the insurance company and the injured party. Here we are not handling articles of commerce but the human mind and body.

Equitable principles should prevail because personal injury releases are not entered into freely. The insurance carrier commands more legal expertise and superior economic strength. Moreover, they possess the ability to continue negotiations for extended periods of time with an injured person who, due to economic necessity, is under pressure to bargain and to settle.

Courts of equity have always permitted the avoidance of releases in instances of fraud, misrepresentation, mutual mistakes of material facts, overreaching, oppression, or other evils. Forcing the victim to bear the burdens of fraud and mistake is manifestly harsh. Recently, courts have been even more liberal in applying the doctrine of rescission—setting aside the release by looking behind the writing to the substance of the release. This has been especially true where there is small consideration as against the value of the injury. Courts have resolved the essential question of whether the claim has been fully satisfied by looking to the intent of the parties, the amount paid, and other surrounding conditions and circumstances such as the nature of the injury, the intelligence and bargaining position of the parties, and the clarity of the fault issue.

Perhaps in this case the insurance adjuster was under such pressure from Kentucky Farm Bureau's home office to settle the claims as quickly and inexpensively as possible due to the potential amount of exposure. This may explain why he used his subtle skills to overwhelm and disarm the innocent Appellant by failing to advise him that the release precluded all other claims. This Court should not sanction this custom of the insurance industry. Considering the whole record and the context of the inferences reasonably deductible therefrom concerning the obtainment of the settlements, the practices of insurance adjusters make Fagan's curriculum, in comparison, seem as noble as the Ten Commandments. We should look to the effects of an insurance adjuster's withholding information rather than the binding effect of sterile legal formalities.

The controlling test should be actual satisfaction and not a presumption of satisfaction by the mere fact of a settlement with one of the tortfeasors. Appellant's affidavits clearly show that the insurance adjuster perpetrated a fraud when the adjuster failed to explain the release.

Where, as in the case at bar, the release cloaks inequity, the release should be vacated and held for naught.

Even in 1904, this Court in *Louisville and Evansville Mail Co. v. Barnes' Adm'r*, 117 Ky. 860, 79 S.W. 261 (Ky.1904), recognized the essential question to be whether the plaintiff's claim had been settled in full as determined by the intent of the parties, and intent itself is an issue of fact for the jury. More recently, the Florida Supreme Court in *Stephen Bodzo Realty, Inc. v. Willits Int'l Corp.*, 428 So.2d 225 (Fla. 1983), avoided a result which it branded "manifest injustice" by refusing to release a joint obligor simply because a co-obligor had been released where no such dual release was intended. In *Ayers v. Pastime Amusement Co.*, 259 F.Supp. 358, 360 (D.C.S.C.1966), the district court stated that the intent of the parties was the major controlling factor in determining whether an instrument was a full release. Furthermore, in *Gronquist v. Olson*, 242 Minn. 119, 64 N.W.2d 159 (1954), the Minnesota Supreme Court directed its attention to whether there was "full compensation" or "satisfaction in fact" and allowed suit even though one or more releases had been executed. The Alabama Supreme Court also addressed this issue in *Morris v. Laster*, 821 So.2d 923 (Ala.2001), where they noted that "Alabama law has long recognized the principle that a plaintiff injured by joint tortfeasors may accept a partial satisfaction and release from one or more of the tortfeasors and still maintain an action against the remaining tortfeasors."

The modern trend in interpreting the intent of the parties has been to scrutinize them by standards of fairness and justice and to inquire whether the release was fairly and knowingly given. In *Breen v. Peck*, 28 N.J. 351, 146 A.2d 665 (1958), the New Jersey Supreme Court held that release of one joint tortfeasor does not release others in the absence of an intention to do so or full compensation to the injured party. In so holding, the New Jersey Supreme Court said that parole evidence was admissible as bearing on both the question of intent and the sufficiency of compensation, and that the burden of showing intent to release both tortfeasors was on the party relying on the release. The New Jersey court did no more than join the thirteen other jurisdictions (California, Connecticut, Idaho, Kansas, Maine, Minnesota, Mississippi, Nebraska, New Hampshire, Oklahoma, Texas, Iowa and Wyoming) already having abrogated the treacherous conceptualism of the common law joint tortfeasor release rule, but the New Jersey court admirably rejected the rule with a very clear and unequivocal judicial fiat without going behind the form of the release by schemes of circumvention, evasion, or avoidance.

In *Commonwealth, Department of Highways v. Cardwell*, 409 S.W.2d 304 (Ky. 1966), this Court, speaking through Commissioner Davis, stated, "[s]urely it does not ask too much of draftsmen and others dealing in such instruments to have them say what is meant." It should be remembered that the draftsman was not the agent of Appellant but was the insurance adjuster whom was representing the adverse interests. The dissenting opinion in *Commonwealth, Department of Highways v. Cardwell, supra*, encouraged flexibility on the part of courts in order to reach a just result without the dependence on the form of the release or the language used therein.

Where the true intentions of the parties can be gathered from the four corners of the instrument, whether a release or a covenant not to sue, resort should not be had to artificial reasoning and mere technicalities that hamper and interfere with the

duty and capacity of the Court to adjudicate disputes and administer justice between the parties. The essential question is whether the plaintiff's claim has been satisfied; this is clearly a matter of the intent of the parties, to be determined in the light of the language of the instrument, the amount paid, and the surrounding circumstances.

Courts exist solely to do justice, and justice should be done. We are not dealing with an article of commerce but the human mind and body, still the most complicated and mysterious of all things that are upon or inhabit the earth. Here, mistakes are easily made and the consequences are more serious than in any other affairs of humankind.

WINTERSHEIMER, J., joins this dissent.