RENDERED: MARCH 29, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0556-MR

JONATHAN ADAMSON AND PAUL
ADAMSON                                                                    APPELLANTS


v.          APPEAL FROM UNION CIRCUIT COURT
            HONORABLE C. RENE' WILLIAMS, JUDGE
            ACTION NO. 15-CI-00099


LOUEVA R. ADAMSON,
INDIVIDUALLY AND AS
EXECUTRIX OF THE ESTATE OF
RICKIE E. ADAMSON AND
CHARLES ADAMSON                                                            APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, EASTON, AND JONES, JUDGES.

ACREE, JUDGE: This appeal presents matters concerning the Rickie Adamson

estate. The case is before our Court for the second time; the Kentucky Supreme

Court, in *Adamson v. Adamson*, 635 S.W.3d 72 (Ky. 2021), reversed and remanded

to the circuit court with instructions. Jonathan and Paul Adamson, Appellants, argue the circuit court failed to follow those instructions upon remand. We affirm.

## BACKGROUND

Rickie Adamson died in 2013. *Adamson*, 635 S.W.3d at 75. His wife, Loueva Adamson, survived him, and is the stepmother of Appellants and Appellee, Charles Adamson. *Id*. Rickie and Loueva owned a farm jointly, with right of survivorship; Loueva then sold the farm to Charles and his wife, Vanda. *Id*.

Loueva attempted to probate a holographic will, purported to be written by Rickie and which left the entirety of his estate to Loueva. *Id*. The district court approved the estate settlement on February 14, 2014, apparently accepting the holographic will as authentic. *Id*. However, a forensic examiner, hired by Appellants, concluded the will was indeed a forgery. *Id*. Appellants then initiated an action in the circuit court against Loueva – individually and as executrix – and Charles, as a beneficiary. *Id*. The estate, Loueva, and Charles were all represented by the Hon. Stephen M. Arnett. *Id*.

The parties mediated in June of 2017. They reached an agreement regarding the suit. The three brothers, with no other parties present, entered an oral agreement regarding the farm.

At a hearing the following June, Charles testified as to his understanding of that agreement: the farm would be deeded over to a limited liability company (LLC), Charles would operate the LLC and determine shares of ownership, and the ownership of the LLC would pass to Charles and his heirs upon the death of Appellants. *Id.* While Appellants agree Charles was to manage the LLC, they contended that each of the three brothers would own an equal share of it. *Id.*

The mediation yielded a settlement agreement, with the eighth and ninth clauses of the agreement specifically dealing with the farm. *Id.* The Supreme Court deemed this portion of the eighth clause relevant:

> As a part of this agreement, the referenced Sale Agreement between Respondent, Loueva Adamson, and Respondent, Charles Adamson and Vanda Adamson, will except as hereinafter set out, be voided and set aside in its entirety. Simultaneous with the voiding of the original Sale Agreement, the Respondent, Loueva Adamson, and Respondent, Charles Adamson, and his wife, Vanda Adamson, each agree to execute another Contract of Sale Agreement (Second Sale Agreement) wherein they agree to sell the farm to Respondent, Charles Adamson, and to Petitioners, Paul Adamson and Jonathan Adamson, equally, as tenants in common, for the the [sic] sale price of Three Hundred Fifty Three Thousand Nine Hundred Nine Dollars ($353,909.00).

*Id.* at 75-76. The Supreme Court deemed this portion of the ninth clause relevant:

> With respect to the farm, Petitioner, Paul Adamson and Jonathan Adamson; and Respondent, Charles Adamson, further agree that a business entity to be called *Bluegate*

> *Farms, LLC* . . . will be formed in accordance with the laws of the Commonwealth of Kentucky, which will be equally owned by Paul Adamson, Jonathan Adamson, and Charles Adamson . . . all parties agree that . . . Charles Adamson will be designated as the manager of Bluegate with authorities and responsibilities commensurate with that position . . . .

*Id*. at 76. The mediator put the terms of the settlement agreement into writing. *Id*. Charles testified he had relayed the terms of the brothers' agreement regarding the farm to the mediator and assumed his brothers had done the same; however, once the mediator presented the agreement to Charles and his wife for them to sign, Charles refused because the terms did not match his understanding of the farm agreement. *Id*. At that point, Arnett told Charles he was no longer able to act as his attorney and advised Charles to obtain new counsel. *Id*.

Appellants then filed a Motion to Enter Judgment seeking, in effect, to enforce the settlement agreement. *Id*. Following a hearing on the motion, the circuit court determined Charles would need to testify prior to its ruling on the motion. *Id*. Also at the hearing, Arnett told the court that matters concerning the farm agreement were beyond his representation of Charles. *Id*. On a later date, Charles testified as to the details of the farm agreement, that he never hired Arnett as his attorney, and that he would tell his wife to agree to any agreement that he and his brothers reached regarding the farm. *Id*.

In its order and judgment, the circuit court determined the Statute of Frauds, KRS[1] 371.010, did not apply but, even if it did, its requirements were satisfied; the circuit court determined Arnett was Charles' agent and that Arnett had signed the settlement agreement on Charles' behalf. *Id*. at 76-77. It also determined Charles was his wife's agent for purposes of the agreement and estopped Charles from arguing otherwise. *Id*. at 77. The circuit court adopted the settlement agreement in its judgment and ordered the agreement be enforced. *Id*. We affirmed, and the Supreme Court granted Charles' motion for discretionary review. *Id*.

The Supreme Court reversed. *See id*. It determined the Statute of Frauds was sufficiently broad to apply to the farm agreement. *Id*. at 77-78. However, it also determined the Statute of Frauds was not satisfied because though Arnett was Charles' attorney until Arnett terminated the relationship, Arnett was not Charles' agent for the purpose of adopting the settlement agreement and was thus unable to bind Charles to it. *Id*. at 79-80. The Supreme Court also determined Charles was not an apparent agent for his wife, because Charles' wife, as purported principal, made no statements or allusions to Charles being her agent for purposes of the agreement. *Id*. at 80-81.

---

[1] Kentucky Revised Statutes.

The Supreme Court determined the clauses of the settlement agreement concerning the farm and those concerning personal property were supported by separate consideration and thus the provisions concerning the farm were severable from the remainder of the agreement. *Id*. at 81-82 (citing *Bitzer v. Moock's Ex'r & Trustee*, 271 S.W.2d 877, 879 (Ky. 1954)). The Supreme Court instructed the circuit court, on remand, as follows:

> [W]e remand to the Union Circuit Court with instructions to vacate its judgment and order insofar as it pertains to the farm agreement, specifically clauses 8 and 9. The mediation agreement as to the estate is valid; however, *any ambiguities or errors as to the written mediation agreement's divergence from what was orally agreed to by the parties should be resolved by the trial court after proper findings of fact.*

*Id*. at 82 (emphasis supplied). The Supreme Court reiterated this result in its conclusion:

> The opinion of the Court of Appeals is reversed. We remand to the Union Circuit Court with instructions to vacate its order and judgment as to clauses 8 and 9. *Any errors or ambiguities in the rest of the mediation agreement may be remedied upon findings of fact by the trial court.*

*Id*. (emphasis supplied).

Upon remand to the circuit court, Appellants moved to set aside the entirety of its settlement agreement and judgment. They argued that, in the absence of Clauses Eight and Nine, they never would have agreed to what is now,

-6-

in their view, a partial agreement; instead, they stated their desire that their original petition proceed to adjudication and that the settlement be nullified.

The circuit court denied the motion and adopted the settlement agreement, with Clauses Eight and Nine excised, via an order entered April 19, 2022. Because the Supreme Court determined those clauses were severable from the remainder of the settlement agreement, the circuit court kept the remainder of the agreement intact. The circuit court also denied Appellants' motion for leave to amend their complaint and their motion to join an indispensable party. Determining all issues related to Charles Adamson were moot because all issues regarding the farm had been resolved, the circuit court also granted Charles' motion to be dismissed as a party to the action. It entered its order without conducting an evidentiary hearing or making any additional findings of fact. Appellants now appeal.

## **ANALYSIS**

### *I. The Circuit Court Followed the Supreme Court's Instructions on Remand.*

Appellants first argue the circuit court failed to follow the Supreme Court's instructions on remand. They argue the Supreme Court required the circuit court to make additional findings of fact in order to resolve errors or ambiguities in the remainder of the settlement agreement. We disagree.

The question of whether the circuit court followed the Supreme Court's instructions on remand is one of law. On appeal, questions of law are subject to *de novo* review. *Gosney v. Glenn*, 163 S.W.3d 894, 888 (Ky. App. 2005).

"The law-of-the-case doctrine describes a principle which requires obedience to appellate court decisions in all subsequent stages of the litigation." *Buckley v. Wilson*, 177 S.W.3d 778, 781 (Ky. 2005) (citing *Inman v. Inman*, 648 S.W.2d 847 (Ky. 1982)). Accordingly, trial courts are required to "strictly follow the mandate given by an appellate court in that case." *Id*. (citing *Williamson v. Commonwealth*, 767 S.W.2d 323 (Ky. 1989)). The trial court, upon remand, "is without power to entertain objections or make modifications in the appellate court decision." *Williamson*, 767 S.W.2d at 325 (citations omitted).

We determine the circuit court entered a judgment consistent with the Supreme Court's ruling, and thus complied with the law-of-the-case doctrine. At issue first is the following statement, which Appellants insist is an instruction to conduct further findings of fact: "any ambiguities or errors as to the written mediation agreement's divergence from what was orally agreed to by the parties should be resolved by the trial court after proper findings of fact." *Adamson*, 635 S.W.3d at 82. Of course, this is not a statement that ambiguities exist in the remainder of the agreement. Rather, the Supreme Court permitted the circuit court,

should the circuit court detect any ambiguities or errors, to engage in further fact finding. Had the Supreme Court identified such ambiguity or error and wanted to explicitly instruct the circuit court to resolve them, it would have done so. Further, and as Appellees note in their brief, Appellants never identified any errors or ambiguities in the agreement after the case had been remanded; rather, they simply expressed their desire for a global settlement of all issues or no settlement at all, saying they would not have agreed to a partial settlement.

The second statement at issue is as follows: "Any errors or ambiguities in the rest of the mediation agreement may be remedied upon findings of fact by the trial court." *Id*. Again, this statement does not identify any errors or ambiguities, nor does it mandate additional fact finding to identify them. In fact, by stating the circuit court "may" remedy such errors or ambiguities with findings of fact, the Supreme Court leaves the option open to the circuit court. In our view, the Supreme Court, while striking Clauses Eight and Nine from the agreement, carefully worded its opinion so the circuit court would not be forced to adopt the remainder of the agreement in the event the circuit court identified any error or ambiguity therein.

The Supreme Court remanded this case to the circuit court with the following explicit instruction: "we remand to the Union Circuit Court with instructions to vacate its judgment and order insofar as it pertains to the farm

agreement, specifically clauses 8 and 9." *Id.* If the Supreme Court wanted to require the circuit court to engage in additional fact finding to determine whether errors or ambiguities remained in the settlement agreement, it could have been similarly specific. Because the circuit court followed the law of the case, we find no error in its decision to adopt the intact portions of the agreement as part of its judgment.

## II. *A Valid Agreement Still Existed Between the Parties Thereto.*

Appellants next argue that the circuit court erred because, had it made further findings of fact, it would have determined an enforceable agreement no longer existed between the parties. They argue they were only interested in a full and final settlement of all issues and believed such settlement had been reached after mediation and after the circuit court's original judgment. Once the Supreme Court removed Clauses Eight and Nine from the settlement agreement, they argue the agreement is now unenforceable on the basis of a mutual mistake. Again, we do not agree.

"Settlement agreements are a type of contract[.]" *Id.* at 77 (citing *Frear v. P.T.A. Indus, Inc.*, 103 S.W.3d 99, 105 (Ky. 2003)). Where relevant facts are undisputed, issues of contract formation present questions of law, and, therefore, we review such issues *de novo*. *Baumann Paper Co. v. Holland*, 554 S.W.3d 845, 848 (Ky. 2018). Issues of contract interpretation also present

-10-

questions of law and, therefore, are reviewed *de novo*. *Adamson*, 635 S.W.3d at 77.

Although the Supreme Court found the settlement agreement was valid once the provisions regarding the farm were removed, *id*. at 82, this alone is not enough to affirm the circuit court's adoption of the agreement. As noted above, the Supreme Court allowed the circuit court to resolve any errors or ambiguities in the agreement, should any be detected. Regardless, the circuit court detected no such error or ambiguity so there was nothing to rectify.

We agree with Appellees that all essential elements of a contract are present in the settlement agreement – even absent Clauses Eight and Nine. "The fundamental elements of a valid contract are 'offer and acceptance, full and complete terms, and consideration." *Energy Home, Div. of Southern Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 834 (Ky. 2013) (quoting *Commonwealth v. Morseman*, 379 S.W.3d 144, 149 (Ky. 2012)). Complete terms are those which are "'definite and certain' and must set forth the 'promises of performance to be rendered by each party.'" *Id*. (quoting *Kovacs v. Freeman*, 957 S.W.2d 251, 254 (Ky. 1997)).

Equally important to formation of a contract is a "meeting of the minds," which is synonymous with "mutual assent" to the terms of the agreement.

*Snowden v. City of Wilmore*, 412 S.W.3d 195, 206 (Ky. App. 2013) (quoting 15B AM. JUR. 2D *Compromise and Settlement* § 7).

Each requirement of contract formation was met as to the settlement agreement. The parties convened at mediation, discussed and agreed to terms, and accepted the terms by their signatures. *Adamson*, 635 S.W.3d at 75. The mediation and the resultant written agreement, prepared by the mediator, also reflect a mutual assent to the terms of the agreement. *See id.* at 76. The agreement was also supported by consideration. *Id.* at 82. Of course, and as the Supreme Court detailed in its opinion, there was a lack of mutual assent as to the terms of the agreement concerning the farm; Charles testified that the terms therein were different than those which he and his brothers agreed to. *Id.* at 76. While the Supreme Court determined the provisions regarding the farm were invalid, it concluded these provisions were supported by different consideration than the remainder of the agreement and, therefore, determined the remainder of the agreement was severable. *Id.* at 82. The lack of mutual assent to the agreement, other than Charles' challenges to the farm provisions, was not challenged before the Supreme Court. *See id.*

Appellants currently assert there is no longer mutual assent because they would not have agreed to the settlement agreement without the excised provisions. However, the brothers offer no evidence for this proposition. The only

-12-

differing understanding of the terms of the agreement was held by Charles, which was only relevant to the provisions concerning the farm. "A party's mental reservations and unexpressed intentions will not supersede outward expressions of assent or override objective and unequivocal manifestations of assent to terms of the settlement agreement." *Snowden*, 412 S.W.3d at 207 (quoting 15B AM. JUR. 2d *Compromise and Settlement* § 7). The remainder of the agreement was severable from the farm provisions because they were supported by separate consideration; therefore, all elements of contract formation are met as to the agreement. Because Appellants offer no evidence that they would not have agreed to the settlement agreement absent the farm provisions, we determine, as the Supreme Court did, that the settlement agreement is a valid contract.

Appellants also assert the contract should be rescinded on the basis of mutual mistake. To do so, three elements must be established. *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 704 (Ky. 2006) (citing *Campbellsville Lumber Co. v. Winfrey*, 303 S.W.2d 284, 286 (Ky. 1957)). First, the mistake must be mutual, not unilateral. *Id.* Second, clear and convincing evidence must demonstrate the mutual mistake. *Id.* Finally, it must be demonstrated that the parties actually agreed to terms different than those in writing. *Id.*

We agree with Appellees that if any mistake is present, such mistake is unilateral. As they point out, Appellants offer no proof that any party other than

-13-

themselves was under any mistaken impression regarding the agreement. It has not been shown that any Appellee understood the agreement was only achieved through settlement of all issues between the parties. Because the remaining settlement agreement is a validly formed contract, and because no mutual mistake has been demonstrated in order to rescind it, we find no error in the circuit court's decision to adopt the provisions of the agreement that survived Supreme Court review.

### III. The Circuit Court Did Not Violate Appellants' Constitutional Rights.

Finally, Appellants allege the circuit court violated their constitutional rights by not allowing their original petition to proceed to adjudication. Specifically, they argue their access to the courts was impinged in violation of Section 14 of the Kentucky Constitution, and that their due process rights under the Fourteenth Amendment of the United States Constitution were violated because they were not granted a reasonable opportunity to be heard.

The record and procedural history of this case do not support these assertions. Upon remand, Appellants filed their Motion to Vacate with the circuit court, requesting the entire settlement agreement be set aside. However, we note this scant motion identifies no errors or ambiguities which required addressing by the circuit court. Instead, the motion simply states the Appellants expected a global settlement and that they "had and continue to have no desire to enter into

any partial settlement agreement with the parties."  As the circuit court notes in its order on Appellant's motion, "[a] hearing was held, and all parties have fully responded to each issue before the Court."  Appellants had full access to the courts. Additionally, Appellants had a reasonable opportunity for their motion to be considered by the circuit court which, indeed, did consider all issues presented.

## CONCLUSION

Based on the foregoing, we affirm the Union Circuit Court's April 19, 2022 Order adopting the remaining provisions of the settlement agreement.

ALL CONCUR.


BRIEFS FOR APPELLANTS:

William Clint Prow
Providence, Kentucky

BRIEF FOR APPELLEES:

Stephen M. Arnett
Morganfield, Kentucky