INVESTORS HERITAGE LIFE
INSURANCE COMPANY,
Appellant,

v.

The FARMERS BANK, Butler, Kentucky; Alma M. Schafer and Joyce A. Schafer, Appellees.

No. 86–CA–1984–MR.

Court of Appeals of Kentucky.

Dec. 23, 1987.

Rehearing Denied March 11, 1988.

Discretionary Review Denied by
Supreme Court May 31, 1988.

A.J. Jolly, Newport, for appellant.

James A. Dressman, III, Covington, for appellee, Farmers Bank, Butler, Kentucky.

John M. Schardein, Louisville, for appellees, Alma M. Schafer and Joyce A. Schafer.

Before HOWERTON, C.J., and
COMBS and WEST, JJ.

COMBS, Judge.

This is appellant's second appeal from a judgment of the Campbell Circuit Court. We dismissed the first one because the judgment appealed from was not final.

The parties are familiar with the facts of this case. Thus, we shall only briefly summarize the facts necessary to an understanding of the issues on appeal.

On April 28, 1969, Investors Heritage Life Insurance Company [Investors], entered into an agreement with Farmers Bank of Butler, Kentucky [Bank], whereby the Bank became the agent of Investors. The Bank was authorized to solicit insurance on behalf of Investors and to deliver forms prepared by Investors. The Bank was prohibited from countersigning or delivering any policies except in accordance with the terms of that agreement. It expressly provided that the Bank could utilize only the forms furnished by Investors, and the Bank was prohibited from altering, varying or waiving, in any way, the policy conditions. At this time Investors issued

two life insurance policies, a "reducing term" and a "non-reducing term".

On February 9, 1982, Lee A. Schafer borrowed $20,000.00 from the Bank for a term of twelve months. He was charged a single premium of $130.00. In the space provided in the application for the policy, indicating the type of loan, the "monthly reducing" box was checked. Mr. Schafer signed as borrower, and Wanda Vader, a longtime employee of the Bank, signed as agent for Investors.

Mr. Schafer died during the eleventh month following the execution and delivery of the note. Upon notification of his death, Investors paid to the Bank the sum of $1,666.66. According to its calculations, this would have been the balance due at the time of death had the note been retired as a monthly reducing loan.

Thereafter, the Bank filed suit against the co-maker, Joyce Schafer, and Alma Schafer as guarantor of the note. The defendants filed answer denying liability. Affirmatively, they alleged that at the time of the loan, they signed on the Bank employees' representation that the loan was insured. Thereafter the Bank amended its complaint making Investors a party defendant. The guarantor then filed a cross-claim. The co-maker died during these proceedings.

All parties filed motions and cross-motions for summary judgment. The court entered an order overruling Investor's motion. The motions of the Bank and the guarantor were sustained. Judgment was entered on December 10, 1984, in favor of the Bank against Investors in the amount of $22,218.88. Investors immediately filed a notice of appeal. Thereafter the trial court purported to enter *nunc pro tunc* orders allowing reasonable attorney's fees for both the Bank and guarantor.

Promptly after this Court entered its order dismissing the appeal, the Bank moved the trial court for an order conforming to our opinion. Subsequently, Investors moved the trial court to vacate its order of December 10, 1984, and its *nunc pro* tunc order of February 7, 1985, allowing attorney's fees and requested leave to file amended answer, and a counterclaim seeking indemnity against the Bank for any judgment granted in favor of the guarantor. It also tendered a third party claim against the Bank officers and employees seeking indemnification for any claim the Bank and the guarantor might have against it.

On August 7, 1986, the trial court entered three orders which are the basis of this appeal. The first sustained the Bank's motion to enter an order conforming to our earlier opinion. The second overruled Investor's motion to vacate the previous order and for leave to file amended answer and third party complaint. The third order reinstated the prior rulings concerning the judgments and attorney's fees.

In seeking reversal, Investors contends that it is not liable to the Bank or others for the errors and omissions of the Bank's agents or for the errors and omissions of their dual agents; that attorney's fees are not recoverable in an action based upon negligence or an action based upon an insurance policy; and that the court erred in overruling its motion to file amended answer and third party complaint.

The Bank contends that the trial court was correct in holding the agency contract created an obligation on the part of the Bank to insure the entire balance of the loan, and that the insurance policy should be interpreted or conformed to reflect the intent of the parties. We disagree and reverse.

Appellees contend here, as below, that the parties intended to, and did insure the loan for the full $20,000.00 despite the fact that the application for insurance plainly shows the insured sought a monthly reducing loan and the premium charged was for a monthly reducing loan of $20,000.00.

■ Two Bank employees participated in the preparation of the note, and obtaining the insurance. Mrs. Norton represented to the guarantor that the note would be insured. It was through her actions that the note was improperly prepared or that an inappropriate policy was issued. Investors made no mistake. It simply issued the

policy ordered and paid for. It is fundamental that a unilateral mistake is not grounds for the reformation of a contract. *See Kentucky Title Company v. Hail,* 219 Ky. 256, 292 S.W. 817 (1927).

Mrs. Vader, the Bank's cashier and special agent for Investors, was unable to explain why the insurance application was checked as a monthly reducing loan. Mr. Mark Yelton, executive vice president and chief executive officer of the Bank, testified that this was the first time the Bank had made such a loan. Yet Exhibit C is another insurance application signed by Mr. Schafer a year earlier for another loan. Mr. Yelton signed this application as Investors' agent. It was also for a monthly reducing loan.

Investors filed the affidavit of its treasurer, Mr. Johnson. He stated that he was familiar with their premium rates, and the premium recited on the policy issued on February 9, 1982, to Mr. Schafer in the amount of $130.00 was consistent with the provisions of a one year policy as indicated on the face thereof. The Bank was the only one able to protect itself under these circumstances. Its failure to do so is fatal to its claim. *Union Bank of Berry v. National Surety Company,* 195 Ky. 504, 243 S.W. 13 (1922), sets forth the general rule that one principal is not liable to the other for the acts of their dual agents.

In awarding attorney's fees the court relied upon the provisions of KRS 411.195 which deal with the enforceability of written contracts to pay attorney's fees in the event of default. There was no written agreement between the Bank, Investors and the guarantor to pay attorney's fees. The guarantor had agreed to pay attorney's fees in the event of default, but Investors was not a party to that agreement. Our courts have consistently denied attorney's fees except where such fees are expressly authorized by contract or statute. This is an action upon an insurance contract and consequential damages such as attorney fees are not recoverable. *See Blue Cross and Blue Shield of Kentucky, Inc. v. Whitaker,* Ky.App., 687 S.W.2d 557

(1985); and *Federal Kemper Ins. Co. v. Hornback,* Ky., 711 S.W.2d 844 (1986).

For the foregoing reasons, we reverse and remand with directions to enter a new judgment in favor of appellant, and dismissing the Bank's amended complaint and the guarantor's cross-claim against Investors.

All concur.