James D. **NICHOLS**, Appellant

v.

**ZURICH AMERICAN INSURANCE COMPANY**, Appellee.

No. 2012–SC–000317–DG.

Supreme Court of Kentucky.

Feb. 20, 2014.

Kevin Crosby Burke, Udell Barry Levy, Louisville, Counsel for Appellant.

Robert E. Stopher, Robert Dmitri Bobrow, Boehl, Stopher & Graves, LLP, Louisville, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Upon the motion of Appellant, James D. Nichols, we granted discretionary review of the Court of Appeals' opinion affirming a summary judgment of the Jefferson Circuit Court entered on behalf of Appellee, Zurich American Insurance Company (Zurich). The summary judgment dismissed Nichols' claim for Underinsured Motorist (UIM) coverage under an insurance policy issued by Zurich upon the grounds that the UIM coverage included in the policy was the result of a mutual mistake in the making of the insurance contract.

On appeal, Nichols's main argument is that the defense of mutual mistake upon which the trial court reformed the policy was not available because Zurich failed to present evidence that proved by clear and convincing evidence that it had mistakenly issued UIM coverage. Nichols also contends that the doctrine of mutual mistake

should not have been applied because Zurich failed to affirmatively plead the defense of mutual mistake with particularity and thus waived the defense; that reforming the insurance policy on the grounds of mutual mistake is inconsistent with Kentucky statutes regulating insurance; that Nichols was improperly denied partial summary judgment on the issue of UIM coverage; and that the Court of Appeals erred in affirming the trial court's denial of Appellant's request to amend his complaint to include a claim of statutory bad faith.

## I. FACTUAL AND PROCEDURAL HISTORY

Nichols was employed by Miller Pipeline Corporation (Miller), a corporation with its primary place of business in Indiana. On June 4, 2002, while driving a truck for Miller in Jefferson County, Kentucky, Nichols was severely injured in an automobile collision. Miller had a commercial fleet vehicle insurance policy issued by Zurich with an effective date of April 1, 2002. The policy included an UIM endorsement with $1,000,000.00 limits. The policy had been procured through Miller's use of an independent insurance broker, M.J. Insurance, Inc., of Indianapolis, Indiana.

As a result of his injuries, Nichols received workers' compensation benefits. Zurich was also Miller's workers' compensation carrier. The driver whose negligence had caused Nichols' injuries had an insurance policy with a $25,000.00 liability limits. In September of 2003, the at-fault driver's insurance company offered to pay

its policy limits in exchange for a release of its insured driver. Nichols, aware of the UIM coverage included in the April 2002 Zurich policy, notified Zurich of his proposed settlement with the tortfeasor pursuant to KRS 304.39–320(3) and *Coots v. Allstate Insurance Co.*[1]

When Zurich did not respond to the *Coots* notice, Nichols accepted the settlement in the fall of 2003, thereby permanently foreclosing any potential to collect his damages short-fall from the tortfeasor.[2] Nichols continued his efforts to recover the remainder of his damages from the UIM coverage in the Zurich policy. In February of 2005, Nichols's attorney learned that Zurich was claiming that there was no UIM coverage because "Miller Pipeline had rejected the coverage both in the states of Kentucky and Indiana, as well as the majority of states where they conduct business."[3]

In 2005, Nichols brought suit against Zurich in the Jefferson Circuit Court to recover his damages under the UIM coverage included in the Zurich policy. Zurich's answer, neither admitting nor denying that the policy included UIM coverage, simply asserted "the policy will speak for itself." In August 2006, Zurich moved for summary judgment upon the grounds that "Miller Pipeline had no UIM coverage for Nichols' [sic] accident and [therefore] Nichols has no UIM claim against Zurich American. It's that simple." Unfortunately, as set out below, it was not that simple. Initially, the trial court denied Zurich's motion for summary judgment,

---

1. 853 S.W.2d 895 (Ky.1993).

2. On the workers' compensation side of the case, Zurich as the workers' compensation carrier had agreed to release its statutory lien on the settlement proceeds in return for one-third of the $25,000.00 settlement. Consequently, Zurich collected $8,333.33.00 of the

money paid by the tortfeasor's insurance company.

3. The correspondence communicating this information was a letter from one of Zurich's senior claims advisors dated November 2, 2004 but sent by fax to Nichols's attorney on February 2, 2005.

finding that genuine issues about the facts surrounding Miller's purported rejection of UIM coverage remained unresolved.

As the facts before the trial court developed, the policy issued to Miller by Zurich in April 2002 contained two endorsements providing for UIM coverage: Endorsement CA 21 79 ("Kentucky Underinsured Motorist Coverage") and Endorsement CA 21 17 ("Uninsured Motorist Coverage," which by its definitions provision included "underinsured" coverage). The form upon which Miller formally rejected Endorsement CA 21 79 was not submitted to Zurich by Miller until June 20, 2002—sixteen days after Appellant's accident, but it was back-dated to April 1, 2002.[4] The first formal indication to Nichols that Miller had intended to reject UIM coverage did not arrive until February 3, 2005, thirty-four months after the policy was issued and thirty-two months after the accident.

July 2009, after the parties had conducted discovery, Nichols moved for partial summary judgment on the issue of liability, arguing that undisputed facts compelled the conclusion that his injuries were covered by the UIM provisions included in the 2002 insurance policy. In response, Zurich moved for summary judgment, arguing that the inclusion of UIM coverage in the policy was a mutual mistake by Miller and Zurich that required reformation of the policy to reflect Miller's intent to reject UIM coverage. In connection with that motion, Zurich was granted leave of court to amend its answer to assert the equitable defense of mutual mistake.

Ultimately, the trial court denied Nichols's motion for partial summary judgment and granted Zurich's motion for summary judgment. Nichols then moved the court to alter, amend, or vacate its order. He also moved at that time for leave to amend his complaint to add a statutory bad faith claim. Both motions were denied; Nichols appealed. The Court of Appeals affirmed the trial court. We granted discretionary review.

## II. REFORMATION UPON THE EQUITABLE DOCTRINE OF MUTUAL MISTAKE

■ Nichols argues that the Court of Appeals erred by affirming the trial court's application of the equitable doctrine of mutual mistake. In support of his argument, Nichols asserts that there could be no mutual mistake because Zurich did not demonstrate by clear and convincing evidence that, at the time it issued the policy in question, it intended to issue a policy that excluded UIM coverage. Zurich concedes that the original policy included $1,000,000.00 in Kentucky UIM coverage, but reiterates the argument it made in the trial court and the Court of Appeals, that the policy is subject to reformation because of a mutual mistake about Miller's intentions regarding UIM coverage. Because certain material facts are not disputed, both sides agree that summary judgment is proper. They disagree upon how the law is to be applied to those facts. Because summary judgment involves only questions of law, an appellate court need not defer to the trial court's decision and will review the issue de novo. *Steelvest Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480–82 (Ky.1991).

### A. Reformation of the Insurance Contract on the Grounds of Mutual Mistake Was Improper

■ To reform a written contract upon the equitable grounds of mutual mis-

---

4. Nichols also argues that UIM coverage provided by Endorsement CA 21 17 was never formally rejected and, therefore, remains in effect to provide the coverage he claims. Because we reverse the Court of Appeals opinion based upon his other arguments, we need not address that point.

take, the proponent of the reformation must satisfy these three elements: "First, it must show that the mistake was mutual, not unilateral. Second, '[t]he mutual mistake must be proven beyond a reasonable controversy by *clear and convincing evidence*.' Third, 'it must be shown that the parties had actually agreed upon terms different from those expressed in the written instrument.'" *Abney v. Nationwide Mutual Insurance Co.*, 215 S.W.3d 699, 704 (Ky.2006) (quoting *Campbellsville Lumber Co. v. Winfrey*, 303 S.W.2d 284, 286 (Ky.1957)) (alteration in original). In addition, "[t]he mistake must be one as to a material fact affecting the agreement and not one of law, which is 'an erroneous conclusion respecting the legal effect of known facts.'" *Id.* (quoting *Sadler v. Carpenter*, 251 S.W.2d 840, 842 (Ky.1952)).[5] The facts, as construed most favorably to Zurich, do not establish the first essential element of mutual mistake.

■■■ Kentucky jurisprudence on mutual mistake aligns well with the general authorities on the subject. The Restatement (Second) of Contracts § 155 (1981) provides:

Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement, except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected.

As stated in American Jurisprudence 2d, "[a] court of equity has the power to reform a written instrument where, due to a mutual mistake by the parties, the instrument as drawn does not accurately express the true intention or agreement of the parties." 66 Am.Jur.2d *Reformation of Instruments* § 20 (2013). "*Where a reformation of an instrument is sought on the ground of mutual mistake, it must be proved to be the mistake of both parties. In other words, a mutual mistake means a common mistake by all the parties.*" *Id.* (emphasis added).

As further explained at 66 Am.Jur.2d *Reformation of Instruments* § 22 (2013):

A mutual mistake in a written agreement that will justify reformation of the agreement is one common to both or all parties wherein each labors under the same misconception respecting a material fact, the terms of the agreement, or the provision of a written agreement designed to embody such an agreement.

. . .

It is deemed a mistake where both parties sign an instrument mistakenly believing that it reflects their antecedent bargain, and the mistake is mutual if the contract is written in terms that violate the understanding of both parties—that is, if it appears that both have done what neither intended.... *The mistake cannot be mutual if the minds of the parties did not meet in a common intent.*

(Footnotes omitted) (emphasis added).

Based upon these governing principles, to establish a mutual mistake justifying reformation in this case, there must be proof that both Miller and Zurich had a meeting of the minds, "a common intent," to enter into an insurance contract that excluded UIM coverage but, because of their mistake, the resulting policy included "what neither intended"—*i.e.* UIM coverage. For a reformation of the policy under the doctrine of mutual mistake, both Miller and Zurich must have intended to

**5.** "There are exceptions to this general rule as when a mistake of law is induced by fraud, undue influence or abuse of confidence." *Sadler*, 251 S.W.2d at 842.

execute an insurance contract that excluded UIM, but executed instead a contract that did not conform to their shared intent. *That*, however, is not what the facts show.

Construed most favorably to Zurich, the evidence indicates that at the time the insurance contract was formed, the minds of the contracting parties, Miller and Zurich, did not meet with the common intent to execute a policy that excluded UIM coverage. There is no evidence that when it issued the policy on April 1, 2002, Zurich intended for the policy to exclude UIM coverage but mistakenly issued a policy that included UIM coverage. The evidence is that Zurich intended to issue a policy with UIM coverage because it had not been informed of Miller's desire to reject UIM coverage until *after* the accident occurred.

The undisputed evidence reveals that before the policy was executed, Miller's Director of Risk Management, Jeanne Fuqua, informed Kathy Kebo, who worked as a "producer"[6] at M.J. Insurance, that Miller wanted a policy that rejected UIM coverage in every state where it could legally do so. Miller was one of her clients, and so she handled the procurement of the 2002 Miller/Zurich insurance policy. Kebo testified to the general procedures for relaying "data" about M.J. Insurance's clients to insurance companies during the policy procurement process, but significantly, she did not testify that Miller's intention to reject UIM coverage was communicated to Zurich in relation to the policy under review. Fuqua also testified that she did not inform Zurich about Miller's desire to reject UIM. Thus, Miller's intention about UIM coverage is well-established. But, there was no evidence at all that when the policy was executed, Zurich intended to provide a policy that

excluded UIM coverage. Indeed, the record actually demonstrates exactly the opposite—that Zurich intended to issue the policy that it did in fact issue because it had no actual knowledge that Miller wanted something different.

Zurich constructs its case for mutual mistake as follows: "Zurich's mistake was including Kentucky UIM coverage in [the policy] when Miller Pipeline did not want the coverage. Miller Pipeline's mistake was accepting [the policy] believing that it only included the coverage Miller Pipeline wanted." That is not a mutual mistake as our law defines it. What Zurich describes is a misunderstanding between the parties, not a mutual mistake. As Zurich's description illustrates, the parties did not share the same mistake.

The mistake as outlined by Zurich is simply a unilateral mistake by Miller, thinking that the policy it received conformed to the instructions given to its insurance broker. Since Zurich was never told prior to issuing the policy that Miller wanted to reject Kentucky UIM coverage, it cannot be said that Zurich made any mistake at all in the issuance of the policy. Nichols is correct when he argues that there can be no *mutual mistake* unless Zurich was aware when the policy was issued that Miller did not want UIM coverage. Consequently, the first element of mutual mistake as set out in *Abney* is absent from the facts of this case.

In terms of the *Abney* paradigm, prong three of that analysis requires that "it must be shown that the parties had actually agreed upon terms different from those expressed in the written instrument." *Abney*, 215 S.W.3d at 704. As explained above, here the evidence discloses no "actual [ ] agree[ment]" to exclude UIM cov-

---

**6.** Indiana Code § 27–1–15.6–2(8): "Insurance producer" means a person required to be licensed under the laws of Indiana to sell, solicit, or negotiate insurance.

erage from the policy at the time it was executed.

Zurich hinges its claim that it was aware of and shared Miller's intent for a policy that excluded UIM coverage upon Kebo's awareness of that information. Zurich argues that because M.J. Insurance was an agency authorized to sell Zurich's policies, Kebo's knowledge about what policy to procure for Miller should be imputed to Zurich. Zurich reasons that Kebo's knowledge was, in effect, Zurich's knowledge and so Kebo's mistake became Zurich's mistake.

We compare Zurich's argument, however, to the contrary argument made under similar facts by the insurance company in *Investors Heritage Life Ins. Co. v. Farmers Bank,* 749 S.W.2d 688, 689–90 (Ky.App. 1987). Farmers Bank was an authorized agent for soliciting and selling credit life insurance on behalf of Investors Heritage. In that case, bank employees who served as dual agents, making loans for the bank and selling insurance for Investors Heritage, failed to order the correct policy of credit life insurance to fully protect the guarantor on a bank debtor's promissory note. The debtor died before the note was repaid, leaving the guarantors liable for the unpaid balance. The Court said:

> Two Bank employees participated in the preparation of the note, and obtaining the insurance. Mrs. Norton represented to the guarantor that the note would be insured.[7] It was through her actions that the note was improperly prepared or that an inappropriate policy was issued. Investors [Heritage] made no mistake. It simply issued the policy ordered and paid for. It is fundamental that a unilateral mistake is not grounds for the reformation of a contract. See

*Kentucky Title Company v. Hail,* 219 Ky. 256, 292 S.W. 817 (1927).

*Id.*

■ The knowledge of the bank employees who were acting as agents of Investors Heritage was not imputed to Investors Heritage. Their mistake did not become the insurance company's mistake, and so the court denied the guarantor's claims for reformation of the contract. Kebo is at best a dual agent acting not only on behalf of Miller, but also on behalf of Zurich. Like the mistakes of the bank employees in *Investors Heritage,* Kebo's mistake in · failing to communicate the information to Zurich did not become Zurich's mistake enabling it to disclaim the original coverage on the grounds of mutual mistake. As noted in *Abney,* to establish a mutual mistake "it must be shown that the parties had *actually agreed* upon terms different from those expressed in the written instrument." 215 S.W.3d at 704 (emphasis added). Even if Kebo's knowledge may be imputed to Zurich, it cannot be said that Zurich "actually agreed" to execute a policy that excluded UIM coverage. Thus, we reject Zurich's argument. Simply put, the facts establish that Zurich had not "actually agreed" to issue a policy to Miller that excluded UIM coverage, and therefore it did not share Miller's mistaken belief about the policy that was actually issued.

Although not explicitly relied upon by Nichols, there is an additional reason why the doctrine of mutual mistake cannot be applied here. Nichols settled his tort claim in the fall of 2003. In connection with the settlement, he invoked the *Coots* process to put Zurich on notice that he was claiming coverage under the UIM coverage in Miller's policy. Zurich did not deny

---

7. The other employee was a Mrs. Vader, described in the opinion as "the Bank's cashier and special agent for Investors." *Id.* at 690.

UIM coverage at that time, and after it failed to respond to the *Coots* notice, Nichols released his claim against the tortfeasor and began his claim against Zurich. Over a year later, his attorney received a letter from Zurich's Senior Claims Advisor David Gusman that reads in part: [8]

> It has been brought to my attention by our underwriting department that Zurich did not provide Uninsured or Underinsured Motorist coverage for [Nichols' loss of June 4, 2002].
>
> . . .
>
> I apologize for having to bring this to your attention now, but *I was only informed of this signed rejection myself a few weeks ago* . . . and I've been unable to report this fact to you until now [February 3, 2005]." (emphasis added).

Obviously, until long after Nichols had settled his claim with the tortfeasor, the Zurich official negotiating the claim with Nichols's counsel had no knowledge that Zurich "knew" that Miller opted to reject UIM coverage and that Zurich had retroactively reformed the policy.

■ The Restatement (Second) of Contracts, § 155 (1981), quoted previously, provides that an agreement may not be reformed on the basis of mutual mistake *"when rights of third parties such as good faith purchasers for value will be unfairly affected."* (emphasis added). It is well-established in Kentucky law that, while courts of equity have authority to reform a contract, "the reformation cannot prejudice the rights of innocent third parties." *E. Ky. Prod. Credit Ass'n v. Scott,* 247 S.W.2d 983, 985 (Ky.1952) (citing *First Nat. Bank v. Williamson,* 273 Ky. 116, 115 S.W.2d 565 (1938)). For example, the reformation of a deed to cure a mutual mistake is retroactive and attaches to the property contemporaneously with its exe-

cution so that the instrument will read as it was intended, "[b]ut no reformation may be had to the detriment of intervening rights of innocent third parties." *Williamson,* 115 S.W.2d at 568.

Therefore, based upon the foregoing principle, even if a court could construe the circumstances here as a mutual mistake that otherwise might justify reformation, it would have to reckon with the fact that Zurich, despite notice that Nichols was asserting a claim for the UIM coverage, did not assert the mistake or deny the existence of UIM coverage until long after Nichols had released the underinsured motorist responsible for his injuries. Not only did Zurich stand by while Nichols' released the tortfeasor despite its knowledge that UIM coverage had been retroactively excluded, Zurich received one-third of the settlement money that Nichols recovered from the tortfeasor as reimbursement for workers' compensation benefits paid to Nichols. Under such a scenario, it is difficult to conceive how a court of equity could rescue the maker of a contract from the effect of its mistake.

For the reasons stated above, we conclude that the Court of Appeals erred in it application of the doctrine of mutual mistake. The facts borne out by the evidence establish a unilateral mistake for which reformation is not authorized. Having concluded that the doctrine of mutual mistake was erroneously applied by the courts below, reversal is required. Accordingly, we need not address the merits of Nichols's other grounds for reversal.

***B. Nichols was Entitled to Partial Summary Judgment on the Issue of UIM Coverage.***

■ Nichols argues that the same uncontested facts that negate application of

---

8.  See fn 3, *supra.*

the mutual mistake defense also establish without dispute that the Zurich/Miller insurance policy of April 2002, provided UIM coverage, and that his motion for partial summary judgment on the issue of coverage was improperly denied. We agree. Summary judgment is appropriate when it is established that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03.

There is no dispute about the following facts material to Nichols' claim:

- Nichols was an employee of Miller.
- Miller obtained a policy of commercial automobile insurance from Zurich effective April 1, 2002—April 1, 2003.
- As conceded by Zurich, in its Response to Nichols's motion for discretionary review, "the original version of [the policy] provided that Miller Pipeline had $1,000,000 in Kentucky UIM coverage."
- Nichols was injured on June 4, 2002 while operating one of Miller's insured vehicles.
- Miller signed and submitted the forms to reject UIM coverage on June 20, 2002, sixteen days after the accident.
- Nichols properly employed the *Coots* process prior to asserting his claim for UIM coverage.

There may remain for further litigation genuine issues of fact pertaining to an apportionment of fault for the collision, the nature and extent of Nichols's injuries, and the reasonable compensation therefore, but the foregoing establish that Nichols was entitled to partial summary judgment on the issue of UIM coverage. As the trial court first reasoned in its order denying Zurich's initial motion for summary judgment, "[c]learly, cancellation after the time of the accident would not void the policy as to [Nichols's] claim."

Without the defense of mutual mistake justifying the reformation of the policy to retroactively eliminating the UIM coverage to a date prior to June 4, 2002, there are no facts to defeat Nichols's claim to the UIM coverage that was in place at the time of his accident. There is no genuine issue of fact as to whether the policy included UIM coverage at the time of Appellant's accident. Accordingly, it is our determination that the trial court erred in its ultimate decision to deny Nichols's motion for judgment on that point, and the Court of Appeals erred by affirming that decision.

### III. DENIAL OF NICHOLS'S MOTION TO AMEND HIS COMPLAINT TO ASSERT A STATUTORY BAD FAITH CLAIM

Finally, Nichols argues that the trial court abused its discretion by denying his motion to amend the complaint to assert a statutory bad faith claim against Zurich. CR 15.01 provides that after the time for a responsive pleading has passed, or if no further responsive pleading is permitted, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." It is within the trial court's discretion to grant or deny a motion to amend a pleading, and on appellate review, its decision should not be disturbed unless the trial court abused that discretion. *Laneve v. Standard Oil Co.*, 479 S.W.2d 6, 8 (Ky.1972).

Appellant moved the trial court for leave to amend his complaint *after* the trial court granted summary judgment in favor of Zurich. Zurich did not claim that it would suffer prejudice as a result of the amendment of the complaint at such a late date, but instead addressed the merits of Nichols's tendered bad faith claim. While, "lib-

erality in allowing amendments to pleadings is to be definitely encouraged," *id.*, we would not say that the trial court abused its discretion by denying what appeared then to be the post-judgment assertion of a brand-new claim.

However, we have now reversed that summary judgment and ordered the entry of a partial summary judgment in favor of Nichols, remanding the case to the trial court for further proceedings. The circumstances relevant to the issue of amending the complaint will have significantly changed. It is, therefore, appropriate that upon remand, the trial court shall re-evaluate Nichols's motion to amend the complaint and consider, in light of current circumstances, what "justice so requires" under CR 15.01.

## IV. CONCLUSION

For the reasons stated herein, the decision of the Court of Appeals is reversed. The summary judgment dismissing Nichols's complaint is reversed and the order denying Nichols's motion for partial summary is set aside. This matter is remanded to the Jefferson Circuit Court for entry of an order granting Nichols's motion for partial summary judgment on the issue of UIM coverage, and for further proceedings consistent with this opinion.

All sitting. All Concur.