RENDERED: FEBRUARY 4, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0721-MR

LOUISVILLE/JEFFERSON COUNTY                 APPELLANT
METRO GOVERNMENT

                 APPEAL FROM JEFFERSON CIRCUIT COURT
v.               HONORABLE BARRY WILLETT, JUDGE
                 ACTION NO. 12-CI-006579

KEVIN ISHAM; ABNEY LAW
OFFICE, PLLC; DAVID HEADY;
DAVID SPENCER; GARY HOEFLER;
JOSEPH MILLER; JOSEPH VOZZO;
LARRY KISER; P. STEWART
ABNEY; RONALD PARRISH;
STANLEY BAIN; STANLEY
CISSELL; TRAVIS SIMMONS;
WILLIAM HUDSPETH; AND
WILLIAM SPONTAK                  APPELLEES

OPINION
REVERSING AND
REMANDING

** ** ** ** **

BEFORE: COMBS, LAMBERT, AND McNEILL, JUDGES.

McNEILL, JUDGE:  Louisville/Jefferson County Metro Government ("appellant") appeals from a final judgment of the Jefferson Circuit Court awarding appellees unpaid wages, liquidated damages, attorney fees and costs, and prejudgment interest.  After careful review, we reverse and remand.

Appellees are current and former employees of the Towing and Impound Division of appellant's Public Works and Assets Department and members of Teamsters Local Union 783 ("Union").  On January 29, 2007, appellant and the Union entered into a collective bargaining agreement ("CBA") governing the terms and conditions of union members' employment with appellant. Relevant to the appeal, Addendum B to the agreement, pertaining to members of the public works department, provides in relevant part:

> D.  WORKDAY AND WORKWEEK
> 1.      The workday shall consist of a guarantee of eight (8) consecutive hours . . . .  The workweek shall consist of four (4) or five (5) consecutive days Monday through Friday and forty (40) hours per week . . . .
>
> 2.      Members in the Towing and Impound Division shall have a regular work week of six (6) consecutive days Sunday through Saturday and Members shall be guaranteed forty-eight hours per week . . . .
>
> E.  OVERTIME PAY
>      One and one half (1 ½) times the regular hourly rate (which shall include shift premium if any) shall be paid for all hours worked in excess of eight (8) hours in a day or forty (40) hours in a week.  One and one half (1 ½) times the regular hourly rate (which includes shift premium if any) shall be paid for all hours worked on the

sixth (6th) day of any work week for Members on a 5 day workweek and the fifth (5th) day of any workweek for Members on a 4 day workweek. Two (2) times the regular hourly rate (which shall include shift premium if any) shall be paid for all hours worked on a holiday or on the seventh (7th) day of any workweek for Members on a 6 day workweek or a 5 day workweek and the sixth (6th) day of any workweek for Members on a 4 day workweek. . . .

On July 10, 2007, the CBA was amended pursuant to a "Letter Agreement" between appellant and the Union. The section concerning overtime pay for public works employees was amended in its entirety to read:

E.    OVERTIME PAY
For Members on a 5-day or 6-day schedule, one and one half (1 ½) times the regular hourly rate (which shall include shift premium if any) shall be paid for all hours worked in excess of eight (8) hours in a day or forty (40) hours in a week. One and one half (1 ½) times the regular hourly rate (which shall include shift premium if any) shall be paid for all hours worked on Saturday. Two (2) times the regular hourly rate (which shall include shift premium if any) shall be paid for all hours worked on Sunday or a Holiday. . . .

For Members on a 4-day schedule, one and one half (1 ½) times the regular hourly rate (which shall include shift premium if any) shall be paid for all hours worked in excess of ten (10) hours in a day or forty (40) hours in a week. One and one half (1 ½) times the regular hourly rate (which includes shift premium if any) shall be paid for all hours worked on Saturday. Two (2) times the regular hourly rate (which shall include shift premium if any) shall be paid for all hours worked on Sunday or a Holiday. . . .

Based upon the amendment, appellees sought double pay for working on Sundays, which according to the CBA, was part of their regular work schedule. On December 28, 2009, appellees filed a labor grievance which was denied. Then, on December 12, 2012, they filed a civil action against appellant in Jefferson Circuit Court alleging violation of the Kentucky Wage and Hour Act, KRS[1] 337.010 *et seq.* and breach of contract.

Appellant filed an answer to the complaint, alleging, among other things, mutual mistake in the formation of the Letter Agreement. On April 1, 2016, appellant moved for summary dismissal of the appellees' claims, accompanied by an affidavit from Union President John Stovall and a "Memorandum of Understanding" signed by the Chief of Police Steve Conrad[2] and Union Business Representative Durie Downey. Both the affidavit and Memorandum of Understanding state that neither appellant nor the Union intended for employees of the Towing and Impound Division to receive double pay for working on Sundays, unless Sunday was the seventh day of the week they worked. The affidavit further clarifies that the Letter Agreement was to ensure that employees who worked forty-hour workweeks were paid double time for working

---

[1] Kentucky Revised Statutes.

[2] According to appellant's brief, the towing and impound division had become part of the Louisville Metro Police Department at the time the Memorandum of Understanding was drafted in 2015.

on Sundays. The Memorandum of Understanding explains that tow lot employees are treated differently because they have a different work schedule and they are guaranteed a forty-eight-hour workweek.

On January 31, 2017, the trial court denied appellant's motion for summary judgment, finding that the CBA was "unambiguous in granting workers in the Towing and Impound Division the right to receive double pay for work they perform on Sundays." It further found no mutual mistake, noting

> Though the extrinsic evidence on which Defendant relies does contain general, conclusory statements that the Letter Agreement was drafted contrary to the parties' intentions, it does not provide specific facts from which the court could determine that the modification was the result of a mistake, such as if the parties were laboring under a faulty assumption as to the facts existing at the time they modified the collective bargaining agreement or if a clerical error had occurred in drafting the modification. As a result, Defendant is not entitled to a reformation of the contract on the grounds of mistake.

In denying appellant's motion for summary judgment, the trial court granted judgment in favor of appellees as to appellant's liability for violating Kentucky's Wage and Hour Act.[3] Subsequently, the trial court entered an order ruling that appellees were entitled to recover liquidated damages pursuant to KRS 337.385(1). A final judgment was entered on April 10, 2020 awarding appellees

---

[3] The trial court did not explicitly address the employees' claim for breach of contract in its order denying summary judgment. However, we will proceed as if the trial court's judgment implicitly included this claim.

$788,368.86 in unpaid wages, liquidated damages, attorney fees, costs and prejudgment interest. This appeal followed.

Our standard of review on appeal of a summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). The trial court must view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Summary judgment is proper only "where the movant shows that the adverse party could not prevail under any circumstances." *Id.*

As an initial matter, we must address the deficiency of appellant's brief. Its argument section fails to make "reference to the record showing whether the issue was properly preserved for review and, if so, in what manner" as required by CR[4] 76.12(4)(c)(v). We require a statement of preservation:

> so that we, the reviewing Court, can be confident the issue was properly presented to the trial court and therefore, is appropriate for our consideration. It also has a bearing on whether we employ the recognized standard of review, or in the case of an unpreserved error, whether palpable error review is being requested and may be granted.

---

[4] Kentucky Rules of Civil Procedure.

*Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012).

"Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, CR 76.12(8)(a); or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citing *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990)). Because the record is small, and we have been able to determine appellant's arguments were properly preserved, we will ignore the deficiency and proceed with the review.

We note that appellant has not challenged the trial court's interpretation of the CBA on appeal. Instead it argues it was entitled to summary judgment and reformation of the CBA based upon the doctrine of mutual mistake. It also argues it was error for the trial court to *sua sponte* grant summary judgment in favor of appellees. Appellant relies on the affidavit of Union President John Stovall, which states that the "Sunday double-time language . . . was never intended by the Union or Metro to apply to the Towing and Impoundment Division." Therefore, the question before us is whether the trial court erred in failing to grant summary judgment based upon the doctrine of mutual mistake.

> To reform a written contract upon the equitable grounds of mutual mistake, the proponent of the reformation must satisfy these three elements: First, it must show that the mistake was mutual, not unilateral.

> Second, [t]he mutual mistake must be proven beyond a reasonable controversy by *clear and convincing evidence*. Third, it must be shown that the parties had actually agreed upon terms different from those expressed in the written instrument.

*Nichols v. Zurich Am. Ins. Co.*, 423 S.W.3d 698, 702–03 (Ky. 2014) (internal quotation marks and citation omitted).

Appellant contends that Stovall's affidavit satisfies all three elements of mutual mistake, and because it was unrebutted, the trial court erred in denying its motion for summary judgment. Appellees respond that Stovall was not the Union president when the Letter Agreement was drafted and was not involved in negotiating or drafting the CBA or Letter Agreement; therefore, Stovall had no personal knowledge as required by CR 56.05 and the affidavit cannot be relied upon as evidence of the parties' intent.

CR 56.05 requires that affidavits in support of summary judgment be "made on personal knowledge, . . . set forth such facts as would be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated therein." Any information Stovall would have concerning the parties' intent in drafting the CBA or Letter Agreement would be hearsay and inadmissible.

However, appellant also relies on a Memorandum of Understanding, signed in 2015 by a city representative and Union representative Durie Downey.

The Memorandum states that the parties "never intended for the employees of the tow lot to qualify for double pay on Sunday unless Sunday is the seventh day of the week they worked." It further asserts that tow lot employees were treated differently from other employees because their schedule is different, and they were guaranteed a forty-eight-hour workweek. Appellees argue that the city representative, Chief of Police Steve Conrad, was not employed by the city until 2012 and thus has no first-hand knowledge of the parties' intent at the time the Letter Agreement was drafted.

In addition to the Memorandum of Understanding, Downey testified in his deposition that he worked for the Union as a business agent from 2004 to 2015 and would have been involved in negotiating the 2007 CBA and Letter Agreement. Downey did not specifically remember negotiating the Agreement or its terms; however, he testified that it was not the parties' intention that tow lot employees be paid double on Sunday unless Sunday was the seventh day worked.

We find no error in the trial court's denial of appellant's motion for summary judgment. Here, appellant presented evidence that the mistake was mutual in the form of the Memorandum of Understanding, signed by a city representative and a member of the Union. However, the document was not entered into until 2015, long after the Letter Agreement was drafted. Both the Memorandum and Downey's testimony were some evidence that the parties had

agreed upon terms different than in the Letter Agreement, but, as mentioned above, the Memorandum was retrospective, and Downey did not remember specifically negotiating the Letter Agreement, or its individual terms. "To reform a written contract upon the equitable grounds of mutual mistake . . . [t]he mutual mistake must be proven beyond a reasonable controversy by *clear and convincing* evidence." *Nichols*, 423 S.W.3d at 702-03 (internal quotation marks and citation omitted). On summary judgment, "the record must be viewed in the light most favorable to the party opposing the motion and all doubts must be resolved in that party's favor." *Toyota Motor Mfg., U.S.A., Inc. v. Epperson*, 945 S.W.2d 413, 414 (Ky. 1996) (citation omitted).

However, the court went beyond denying appellant's motion for summary judgment, and *sua sponte* granted summary judgment in favor of appellees, determining that appellant was not entitled to reformation of the CBA because it did "not provide specific facts from which the court could determine that the modification was the result of a mistake[.]" On a motion for summary judgment, the trial court's "primary directive . . . is to determine whether a genuine issue of material fact exists; if so, summary judgment is improper[.]" *Patton v. Bickford*, 529 S.W.3d 717, 723 (Ky. 2016) (citation omitted). "The trial court must review the evidence, not to resolve any issue of fact, but to discover whether a real fact issue exists." *Shelton v. Kentucky Easter Seals Soc., Inc.*, 413

S.W.3d 901, 905 (Ky. 2013) (citations omitted). Despite their weaknesses, the Memorandum of Understanding and Durie Downey's testimony create a genuine issue of material fact concerning mutual mistake and therefore summary judgment for appellees was error.

Accordingly, the judgment of the Jefferson Circuit Court is reversed, and this matter is remanded for further proceedings consistent with this opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Michael J. O'Connell
I. Joel Frockt
J. Daniel Landrum
Paul V. Guagliardo
Louisville, Kentucky

BRIEF FOR APPELLEES:

P. Stewart Abney
Louisville, Kentucky