RENDERED: MAY 30, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0952-MR

MERRILYN S. HAZEN        APPELLANT

             APPEAL FROM WOODFORD CIRCUIT COURT
v.            HONORABLE KATHRYN H. GABHART, JUDGE
             ACTION NO. 20-CI-00164

THE WBKE, LLC, AND KEVIN M.
EAGEN, II        APPELLEES

OPINION
AFFIRMING AND REMANDING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; EASTON AND L. JONES, JUDGES.

EASTON, JUDGE: The Appellant, Merrilyn S. Hazen ("Hazen"), asks us to reverse the Woodford Circuit Court's Order granting partial summary judgment to the Appellees, The WBKE, LLC, and Kevin M. Eagen, II (collectively "WBKE"). Hazen also appeals the circuit court's denial of her Motion for Leave to File First Amended Complaint. Upon our review, we affirm and the case is remanded for adjudication of the remaining claims.

## FACTUAL AND PROCEDURAL HISTORY

In 1997, Huntertown Land, Inc. ("Huntertown"), the owner of a large tract of land used for horse farming in Woodford County, subdivided its land into smaller tracts subject to certain deed restrictions ("Deed Restrictions"). This created several lots with a larger residual lot of farmland. Per the Deed Restrictions, "no division of the original 83.28 acres of residual farmland shall take place that would create a tract of fewer than 30 acres." Compliant with this restriction, Huntertown sold just over 30 acres of the residual farmland to Donna Moore Stables, Inc. ("DM Stables").

In 2002, DM Stables conveyed 15.5 acres to a third party. This conveyance left DM Stables with a remainder tract of 15.7 acres (the "Property"), which is the Property at issue in this suit. These DM Stables conveyances violated the Deed Restrictions assuming the restrictions applied to subsequent owners and not just to Huntertown. Since then, the Property has continued to be used as a horse farm. DM Stables sold the Property in 2008, and that buyer's estate sold it to WBKE in 2012. The Deed Restrictions and applicable zoning regulations discussed in this case were a matter of public record for anyone involved with the history of the Property to see at any time.

In 2017, Hazen and WBKE entered into a three-year lease agreement ("Lease Agreement") whereby WBKE agreed to lease the Property to Hazen. The

Lease Agreement included an option to purchase the Property for $1.2 million at the end of the lease. To acquire this option to buy, Hazen was required to pay a nonrefundable amount of $300,000 upon execution of the Lease Agreement and an additional $50,000 by May 2019. Hazen made these payments. These amounts were to be credited toward the purchase price only if Hazen successfully completed the option to buy the Property.[1] Specifically, Section XX(04) of the Lease Agreement provided: "The Seller/Landlord shall not refund the Option fee if the Buyer/Tenant defaults in the Lease Agreement, fails to close the conveyance, or otherwise does not exercise the option to purchase."

According to the terms of the Lease Agreement, Hazen had until May 31, 2020, to exercise the option to buy. Hazen timely notified WBKE of her intent to exercise the option on May 29, 2020. The Lease Agreement required closing "within thirty (30) days of Tenant notifying Landlord of said intent to exercise such Option, unless otherwise extended by other term of this Lease." A provision about title insurance would extend the time for the closing.

---

[1] Hazen asserted equitable claims (rescission and unjust enrichment) and pled for any equitable relief to which she may appear to be entitled. Yet neither the original Complaint nor the proffered Amended Complaint asserted a specific claim that the loss of $350,000 amounted to an impermissible excessive forfeiture under the contract. Such a claim may be established in equity. "But, in the absence of circumstances justifying relief, courts do not make contracts different from those that the parties make for themselves, even when forfeiture provisions are harsh." *Miller Dairy Products v. Puryear*, 310 S.W.2d 518, 521 (Ky. 1952). As such a claim was not addressed in the proceedings below, we will not comment on it further.

Hazen's alleged problem with closing arose from arguable "clouds" on the title because of the Deed Restrictions and applicable zoning regulations. Pursuant to Section XX(08), WBKE was required to "provide evidence of Title in the form of a policy of title insurance" sixty days before closing. But under Section XX(07), Hazen was to take title subject to any "[c]ovenants, conditions, restrictions, reservations, rights, rights of way, and easements of record."

WBKE hired attorney John N. Billings ("Billings") to prepare a title commitment. Hazen's attorney informed Billings of the Deed Restrictions on the Property prohibiting the division of the land into tracts of less than thirty acres. Hazen argued that some property owner in the subdivision could attempt to enforce the restrictions, although this was unlikely due to the passage of over twenty years since the initial division into less than thirty-acre lots. Regardless, WBKE provided Hazen with a proposed title insurance policy which covered any possible claims arising from the Deed Restrictions.

This offered title insurance would not cover zoning regulation. Next, Hazen's attorney discovered the Property was in violation of a Woodford County zoning ordinance also requiring the Property to be at least thirty acres. Hazen's attorney informed Billings of the zoning cloud and requested that WBKE's title insurance also dissipate this cloud. In the meantime, the closing did not occur.

Not waiting for a further response about the zoning issue, Hazen filed her initial Complaint against WBKE seeking damages and rescission. Her Complaint alleged multiple claims,[2] but the argument on appeal is about breach of contract relating to the required insurance and marketable title. WBKE filed its Answer and made counterclaims alleging Hazen's breach of contract by not closing and damage to the Property during her tenancy. WBKE filed a forcible detainer action in district court to recover possession of the Property.

After the Complaint and Answer were filed, the parties began to discuss a possible resolution. Hazen claims she was denied financing for the closing because of the remaining zoning cloud on the title and requested WBKE to obtain reassurances from the Woodford County Zoning Commission ("Zoning Commission") that the Property could be used as intended. WBKE forwarded Hazen a letter from the Zoning Commission stating that, although the Property was an "illegal non-conforming lot," the Zoning Commission would take no action against the Property. With that assurance, WBKE requested Hazen provide a loan commitment to proceed with closing.

---

[2] Hazen claimed breach of contract, specifically for not providing marketable title, along with unjust enrichment, fraud, negligence, and punitive damages. The claims other than breach of contract were abandoned by Hazen, although she points out that the remedial claim of piercing the corporate veil between Eagan individually and WBKE would depend upon the ability of WBKE to satisfy any damages awarded due to any proven breach of contract.

No actual assurance of financing ever came. In January 2021, WBKE sent an email ("Mitigation Letter") to Hazen stating it would be mitigating its damages for her failure to close on the Property. Instead of any loan commitment, Hazen replied to the Mitigation Letter with an email attaching a preliminary "Loan Approval" from Farm Credit Mid-America subject to various conditions. No closing ever occurred.

Hazen filed a Motion for Partial Summary Judgment as to her contractual claim seeking the refund of the $350,000 paid for the option. WBKE filed a competing motion seeking summary judgment on the entire Complaint. In June 2024, almost two years after the hearing on the summary judgment motions, the circuit court issued its Order denying Hazen's motion and granting WBKE'S motion.

The circuit court held that "Hazen's cancellation of the contract due to a zoning issue was unjustifiable as the zoning issue was immaterial to the contract and would not interfere with Hazen's intended use for the property." The court noted that any hypothetical breach of contract by WBKE for failing to supply title insurance that covered potential zoning issues would be irrelevant because the Property was properly zoned for residential use and horse farming and thus enforcement of the subject zoning ordinance was prohibited by law. Finally, Hazen must accept title subject to all "[c]ovenants, conditions, restrictions,

reservations, rights, rights of way, and easements of record" as provided in Section XX(07) of the Lease Agreement. Although WBKE's counterclaims remained, the circuit court's Order contained all the necessary "final and appealable" language to allow appeal of the claims decided by the partial summary judgment.

Hazen then filed two post-judgment motions. She filed a Motion to Amend Judgment pursuant to CR[3] 59.05, as well as a Motion for Leave to File First Amended Complaint under CR 15.01. Both motions were denied. Hazen timely appealed the summary judgment dismissal of her breach of contract claim as stated in her original Complaint, as well as the circuit court's denial of her motion to amend her Complaint.

## SUMMARY JUDGMENT

### STANDARD OF REVIEW

"The standard of review of a trial court's granting of summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. Summary judgment is proper when it appears that it would be impossible for the adverse party to produce evidence at trial warranting a judgment in its favor." *Andrew v. Begley*, 203 S.W.3d 165, 169 (Ky. App. 2006) (citations omitted). "Because summary judgment involves only legal questions and the

---

[3] Kentucky Rules of Civil Procedure.

existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Jenkins v. Best*, 250 S.W.3d 680, 688 (Ky. App. 2007).

**ANALYSIS**

Hazen argues the circuit court erred in dismissing her breach of contract claim based on WBKE's alleged failure to provide insurance to cover the zoning cloud and thus give her marketable title. The claim depends on the application of contract terms. The interpretation of a contract is a question of law and is subject to *de novo* review. *Jackson Hosp. Corp. v. United Clinics of Kentucky, LLC*, 545 S.W.3d 327, 332 (Ky. App. 2018) (citations omitted). A contract is interpreted by looking within the four corners of the agreement. *Smith v. Crimson Ridge Dev., LLC*, 410 S.W.3d 619, 621 (Ky. App. 2013) (citation omitted). "Unambiguous terms contained within the contract are interpreted in accordance with their ordinary meaning, without resort to extrinsic evidence." *Id.* (internal quotation marks and citation omitted). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002).

Section XX(07) plainly reads: "Tenant shall take title to the property subject to 1) Real Estate Taxes not yet due and 2) Covenants, conditions,

restrictions, reservations, rights, rights of way, and easements of record, if any." Section XX(08) then reads: "Landlord shall provide evidence of Title in the form of a policy of title insurance at Landlord's expense at least sixty (60) days before closing."

We agree with the circuit court that Sections XX(07) and XX(08) are unambiguous. The contractual language required WBKE to provide title insurance. There was no requirement that the title insurance cover specific issues like perceived zoning clouds. Otherwise, Hazen's obligation to take title subject to "[c]ovenants, conditions, restrictions, reservations, rights, rights of way, and easements of record" would be meaningless. WBKE fulfilled its contractual obligation under Section XX(08).

Hazen counters that every option contract has an implied term of marketability, and thus WBKE was required to issue title insurance to cover the zoning cloud. It is well settled that a seller of real estate must provide marketable title, and this includes "the right of the purchaser to insist upon a title so clear of defects that there is no reasonable doubt as to its validity and no reasonable basis for apprehension of danger of litigation with regard to it." *Massey v. Fischer*, 245 S.W.2d 594, 596 (Ky. 1952).

WBKE provided marketable title. "The test of such marketability will depend upon the certainty or uncertainty of the title." *Jackson v. Lamb's Ex'r*, 186

S.W.2d 9, 11 (Ky. 1945). The Deed Restrictions, which WBKE insured against anyway, and Woodford County's thirty-acre minimum are now unenforceable against the Property as a matter of law. The Zoning Commission sent a letter characterizing the Property as an "illegal non-conforming lot" but which the Commission would take no action against.

More important than the letter from the Zoning Commission, Hazen also had the protection provided by KRS[4] 100.253. The non-conforming, fifteen-acre lots had existed for over twenty years. The law prevents enforcement of the zoning restriction after such a passage of time. KRS 100.253(2), (3). We need not add to the length of this Opinion with detailed reference to the agricultural supremacy doctrine woven throughout our zoning laws which also would have provided protection for Hazen's continued use of her property. *See Nash v. Campbell County Fiscal Court*, 345 S.W.3d 811 (Ky. 2011).

The zoning "cloud" was actually an illusory wisp of smoke which served to obscure Hazen's failure to obtain financing to close on the option to buy the property. There could be no reasonable apprehension of any suit being filed arising from the zoning restrictions which had been ignored for this property for over twenty years and which could not legally be enforced. Zoning regulation was also separate from any defect in the title to the Property itself, there being no

---

[4] Kentucky Revised Statutes.

indication of a title defect which could lead to loss of title. There was no uncertainty in the Property's title. Thus, WBKE offered marketable title. The circuit court correctly entered summary judgment on the Complaint.

## MOTION TO AMEND

## STANDARD OF REVIEW

The trial court's denial of a motion for leave to amend pleadings is reviewed for abuse of discretion. *McGaha v. McGaha*, 664 S.W.3d 496, 500 (Ky. 2022). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000).

## ANALYSIS

Hazen argues the circuit court abused its discretion when it denied her Motion for Leave to File First Amended Complaint. Hazen sought to amend her pleadings to allege WBKE unilaterally terminated the option contract by sending the Mitigation Letter. The circuit court denied the motion as being untimely.

CR 15.01 allows a party to "amend his pleading once as a matter of course at any time before a responsive pleading is served[.]" After that, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *Id.* Kentucky courts have "consistently supported a liberal interpretation of this Rule."

-11-

*Swearingen v. Hagyard Davidson McGee Assocs., PLLC*, 641 S.W.3d 186, 192 (Ky. App. 2022). "Although liberality in allowing amendments to pleadings is to be definitely encouraged, this does not mean that leave should be granted without limit or restraint. The time must arrive when the plaintiff must be required to stand on the allegations he is asserting." *Laneve v. Standard Oil Co.*, 479 S.W.2d 6, 9 (Ky. 1972).

We believe the circuit court properly exercised its discretion in denying Hazen's motion. In *Laneve*, the former Kentucky Court of Appeals found the plaintiff suing a gasoline company for injuries was not entitled to amend his complaint to add a new claim when the amendment was offered on eve of trial and summary judgment motion, nearly seven years after the institution of the action. *Id.* at 8-9.

In *Nichols v. Zurich American Insurance Company*, 423 S.W.3d 698 (Ky. 2014), an injured plaintiff brought an action seeking underinsured motorist ("UIM") coverage included in employer's automobile policy. The trial court denied plaintiff's motion for partial summary judgment on the issue of UIM coverage. The plaintiff then filed a motion to amend his complaint to include a claim of statutory bad faith. The trial court also denied this motion. The Kentucky Supreme Court held the trial court did not abuse its discretion "by denying what appeared then to be the post-judgment assertion of a brand-new claim." *Id.* at 708.

However, the court reversed the summary judgment, so "upon remand, the trial court shall re-evaluate Nichols's motion to amend the complaint and consider, in light of current circumstances, what 'justice so requires' under CR 15.01." *Id.*

Justice does not require exercises in futility. *See Keeney v. Hanger Prosthetics & Orthotics, Inc.*, 269 S.W.3d 866 (Ky. App. 2007). This argument was made to the circuit court in this case. Hazen's amended Complaint would simply revisit the question of whether Hazen had properly moved toward closing on the option to buy. When Hazen refused to proceed because of the perceived zoning cloud, WBKE was not required to keep extending the time to close and could rightly proceed with mitigation of damages.

We believe the record and the law supports the circuit court's denial of Hazen's CR 15.01 motion. Hazen filed her Complaint in 2020. WBKE sent the Mitigation Letter in January 2021. Hazen asserted her theory regarding the Mitigation Letter in her Motion for Partial Summary Judgment in 2022. Hazen had ample time to file for leave to amend *before* the circuit court's dismissal of her claims by summary judgment in 2024. The court did not abuse its discretion in denying Hazen's motion.

## CONCLUSION

The circuit court did not err in granting partial summary judgment to WBKE. The circuit court also did not abuse its discretion in denying the Motion

for Leave to File First Amended Complaint. The judgment and order of the Woodford Circuit Court are AFFIRMED, and the case is REMANDED for adjudication of the remaining claims.

ALL CONCUR.

BRIEF FOR APPELLANT:

Phillip C. Lawson
Frankfort, Kentucky

BRIEF FOR APPELLEE THE
WBKE, LLC:

C. Richard Colvin
Covington, Kentucky

John N. Billings
Lexington, Kentucky

BRIEF FOR APPELLEE KEVIN
M. EAGAN, II:

John N. Billings
Lexington, Kentucky